**ELECTRONIC INDUSTRIES ASSOCIA-TION, CONSUMER ELECTRONICS GROUP, Petitioner,**

v.

**FEDERAL COMMUNICATIONS COM-MISSION and United States of America, Respondents.***

**No. 75–1120.**

United States Court of Appeals, District of Columbia Circuit.

Argued May 25, 1976.

Decided Dec. 16, 1976.

---

* In which the Federal Communications Commission and the United States are Respondents or Appellees and the following are Petitioners or Appellants;

American Telephone and Telegraph Co., 75–1143; GTE Service Corp., 75–1148; United System Service, Inc., 75–1227; National Association of Radiotelephone Systems, 75–1266; Western Union Telegraph Co., 75–1394, 1395 (two cases); Telenet Communications Corp., 75–1401; Southern Pacific Communications Co., 75–1404; MCI Telecommunications Corp., 75–1422; ITT World Communications, Inc., 75–1453; Communications Satellite Corp., 75–1459; RCA Global Communications, Inc., 75–1513; and COMSAT General Corp. v. Federal Communications Commission, 75–1558.

J. Edward Day, Washington, D. C., with whom William F. Taylor, Washington, D. C., was on the brief for petitioner in No. 75–1120.

Horace P. Moulton, New York City, with whom Stephen N. Shulman, Stephen G. Wood, Washington, D. C., Eric L. Hirschhorn, F. Mark Garlinghouse and Alfred A. Green, New York City, were on the brief for petitioners American Tel. and Tel. Co., and others, in No. 75–1143 also argued for all other petitioners.

Jack David Smith, Counsel, F. C. C., Washington, D. C., with whom Ashton R. Hardy, Gen. Counsel, Daniel M. Armstrong, Acting Associate Gen. Counsel, C. Grey Pash, Jr., Robert C. Ware, Counsel, F. C. C. , Barry Grossman, and Laurence K. Gustafson, Attys., Dept. of Justice, Washington, D. C., were on the brief for respondents.

Allen R. Frischkorn, Jr., Ruth L. Prokop and Timothy N. Seward, Washington, D. C., were on the brief for petitioners in No. 75–1148.

Warren E. Baker, Westwood, Kan., John M. Lothschuetz, Mansfield, Ohio, and Carolyn C. Hill, Washington, D. C., were on the brief for petitioner in No. 75–1227.

Abe Fortas and Kenneth E. Hardman, Washington, D. C., were on the brief for petitioner in No. 75–1266.

Jack Werner, Washington, D. C., was on the brief for petitioner in Nos. 75–1394 and 75–1395. Laurence Singer, Washington, D. C., also entered an appearance for petitioner in Nos. 75–1394 and 75–1395.

Philip M. Walker and Donald E. Ward, Washington, D. C., were on the brief for petitioner in No. 75–1401. Arthur G. House, Chevy Chase, Md., also entered an appearance for petitioner in No. 75–1401.

Herbert E. Forrest, Washington, D. C., Thormund A. Miller, San Francisco, Cal., and James M. Tobin, Washington, D. C., were on the brief for petitioner in No. 75–1404.

Michael H. Bader, Kenneth A. Cox, William J. Byrnes and Raymond C. Fay, Washington, D. C., were on the brief for petitioners in No. 75–1422.

Robert E. McKee and Howard A. White, New York City, were on the brief for petitioner in No. 75–1453.

William K. Coulter and Cynthia R. Clarke, Washington, D. C., were on the brief for petitioner in No. 75–1459.

Denis J. Brion, Washington, D.C., Carl J. Cangelosi, New York City, Eileen Lerman, Washington, D.C., and Donald J. Elardo, New York City, were on the brief for petitioner in No. 75–1513.

John B. Gantt, Washington, D. C., was on the brief for petitioner in No. 75–1558.

James T. Roche, John M. Scorce, Vienna, Va., and Kevin H. Cassidy, Washington, D. C., were on the brief for intervenor in No. 75–1143.

Robert E. Conn, New York City, entered an appearance for intervenor in Nos. 75–1453 and 75–1513.

Before MacKINNON and ROBB, Circuit Judges, and BRODERICK,** United States District Judge for the Eastern District of Pennsylvania.

Opinion for the court filed by MacKINNON, Circuit Judge.

MacKINNON, Circuit Judge:

Petitioners-appellant[1] (hereinafter, "petitioners") in these 14 consolidated cases are common carriers or equipment manufacturers regulated by the Federal Communications Commission (FCC) who seek review of the orders establishing the Commission's 1975 fee schedule[2] insofar as that schedule relates to them. They therefore challenge the validity of the following specific fees: (1) common carrier application, filing, and grant fees; (2) common carrier tariff filing fees; and (3) equipment type approval, type acceptance and certification fees.[3] In accordance with the disposition made in a companion case decided this same date, *National Cable Television Assn. v. FCC (National Cable),*[4] we remand this case to the FCC for reconsideration and clarification of the 1975 fee schedule in accordance with

---

** Sitting by designation pursuant to 28 U.S.C. § 292(d).

1. All of the parties bringing this action filed petitions for review under 47 U.S.C. § 402(a) and 28 U.S.C. § 2342 (1970). In addition, Western Union Telegraph Co. (petitioner in No. 75–1394) filed an appeal under 47 U.S.C. § 402(b) (1970) in the alternative. For reasons stated elsewhere, we hold that the petition for review under § 402(a) is the proper method for initiating proceedings of this nature in this court. *See National Assn. of Broadcasters v. FCC,* 180 U.S.App.D.C. —— at ——–—— n. 1, 554 F.2d 1118 at 1121 n. 1 (1976); *Capital Cities Communications, Inc. v. FCC,* 180 U.S.App.D.C. —— at —— n. 1, 554 F.2d 1135 at 1136 n. 1 (1976).

2. 50 F.C.C.2d 906 (1975), *as amended by* 51 F.C.C.2d 372 (1975), *and* 52 F.C.C.2d 333 (1975).

3. The fee schedule for common carriers may be found at 47 C.F.R. § 1.1113 (1975), while that for equipment manufacturers appears at 47 C.F.R. § 1.1120 (1975).

4. 180 U.S.App.D.C. ——, 554 F.2d 1094 (1976). We shall hereinafter refer to this case as "*National Cable,*" to distinguish it from *National Cable Television Assn. v. United States,* 415 U.S. 336, 94 S.Ct. 1146, 39 L.Ed.2d 370 (1974), which we shall refer to as *NCTA.*

the principles set forth in this and the companion cases also decided this date.[5]

## I.

■ The fees at issue in this case appear to have been fixed in essentially the same way as were the other fees in the 1975 FCC fee schedule. This process, described in greater detail in *National Cable*, was designed to recover the costs associated with the processing of applications and tariff filings, and involved three steps: (1) calculation of "total projected costs" of the particular bureau [6] by adding a pro-rata share of certain indirect costs [7] to "all costs" which could be directly attributed to that bureau; (2) multiplication of this "total projected costs" figure by a percentage representing the portion of the bureau's activity that was devoted to application processing or tariff filing; (3) addition of a portion

of the cost of the Antenna Survey Program conducted by the Field Operations Bureau, where applicable, to arrive at a "fee recoverable cost." [8] Fees were then set by proportionately scaling down previous rates until a projected total revenue equal to the fee recoverable cost was reached.[9]

We have criticized this method of setting fees in *National Cable*, and there determined that the cable television annual authorization fee did not comply with the requirements set out by the Congress in the independent Offices Appropriation Act of 1952 (IOAA) [10] and by the Supreme Court in *National Cable Television Assn. v. United States (NCTA)*, 415 U.S. 336, 94 S.Ct. 1146, 39 L.Ed.2d 370 (1974), and *FPC v. New England Power Co.*, 415 U.S. 345, 94 S.Ct. 1151, 39 L.Ed.2d 383 (1974). We adopt those criticisms here and reach a similar

---

**5.** *National Cable Television Assn. v. FCC*, 180 U.S.App.D.C. ——, 554 F.2d 1094 (1976); *National Assn. of Broadcasters v. FCC*, 180 U.S. App.D.C. ——, 554 F.2d 1118 (1976); *Capital Cities Communications, Inc. v. FCC*, 180 U.S. App.D.C. ——, 554 F.2d 1135 (1976).

**6.** In this case we are concerned with the activities of two bureaus within the FCC: Common Carrier, and Field Engineer (which is the bureau responsible for equipment testing and approval). Other bureaus are Broadcast, Safety & Special, Cable Television, and Field Operations.

**7.** Some indirect costs were excluded from this allocation because they were considered "sufficiently removed from a direct relationship with processing costs." 48 F.C.C.2d 402, 405 (1974).

**8.** 48 F.C.C.2d at 405; J.App. S–1 through S–6 (FCC worksheets). *See also National Cable Television Assn. v. FCC*, 180 U.S.App.D.C. ——, ——, 554 F.2d 1094, 1098–1099 (1976). The calculation for the Field Engineer Bureau is as follows:

| | |
|---|---|
| "All costs" of the bureau | $5,069,185 |
| add: pro rata share of indirect costs | 641,496 |
| Subtotal: Total Projected Costs | 5,710,681 |
| subtract: SMTF * | 2,467,014 |
| Subtotal: | 3,243,667 |
| | .321 |
| Subtotal: Application Processing Costs | 1,041,217 |
| Add: allocated portion of Antenna Survey | —0— |
| Total: Fee Recoverable Costs | 1,041,217 |

J.App. S–1 through S–2, S–5 through S–6. (* The Commission's worksheets do not explain the purpose of this subtraction nor what it represents).

The calculation for the Common Carrier Bureau, as originally made and appearing in worksheets in the Joint Appendix, *supra*, at S–1 through S–4, was as follows:

| | |
|---|---|
| "All costs" of the bureau | $5,942,184 |
| add: pro rata share of indirect costs | 775,631 |
| Subtotal: Total Projected Costs | 6,717,815 |
| Total Recoverable Costs | $6,717,815 |
| | .3125 |
| tariff processing costs | 2,099,317 |
| Total Recoverable Costs | 6,717,815 |
| | .359 |
| allocation of facilities costs | 2,411,695 |
| Subtotal | 4,511,012 |
| add: allocated portion of Antenna Survey | 30,676 |
| Total: Fee Recoverable Costs | 4,541,688 |

However, on November 10, 1975, while this case was pending before this court, the FCC filed a Supplement to the Record which corrected some of the above figures for the Common Carrier Bureau. The new figures, presented in a rounded form are:

| | |
|---|---|
| Total Projected Costs | 6,718,000 |
| Fee Recoverable Costs | 6,278,000 |

Note that while the former figures set Fee Recoverable Costs at approximately 68 percent of Total Projected Costs, the new figures raised that percentage to roughly 94 percent. Since no worksheets were filed with the new figures, we have no way of knowing how they were calculated.

**9.** *See National Cable Television Assn. v. FCC*, 180 U.S.App.D.C. —— at —— —— n. 20, 554 F.2d 1094 at 1098–1099 n. 20 (1976).

**10.** Act of Aug. 31, 1951, ch. 376, Title V, § 501, 65 Stat. 290, *as codified*, 31 U.S.C. § 483a (1970).

conclusion. Despite the wide variety in the composition of the fees for the Cable TV Bureau and the bureaus involved here, and the very substantial difference in duties, the controlling principles are the same. Since the Commission followed the same principles in setting all the fees, the bureau fees here in question should similarly be corrected. The belated revision of the figures for projected and recoverable costs in the Common Carrier Bureau, see note 8 supra, also compels remand. We therefore return this case along with its companions to the Commission for reconsideration and clarification of the 1975 fees.

Petitioners have raised many significant arguments concerning the validity of the particular fees at issue here. It is our conclusion that compliance with the requirements set out in the other cases decided today, see note 5 supra, will also settle many if not all of the disputes which have given rise to this lawsuit. Certain of the contentions of the petitioners in this case bear discussion, however. In the following sections, we discuss several unique questions which bear upon the application of the principles of National Cable by the agency on remand.

II.

The contention most strongly urged by petitioners is that the Commission has no authority to assess any fee for tariff filings and equipment approvals and certifications, even assuming that such fees would be constructed so as to comply with the requirements set out in the companion cases. Petitioners' argument is that the public interest in these activities is so strong that it is unfair to assess any of their cost against any private party. In support of this view, they cite language in NCTA which they allege indicates that the inclusion of charges for services rendered to the public in a fee assessed against a private party will transform that fee into a tax, which the agency has no authority to levy. 415 U.S. at 341–42, 94 S.Ct. 1146.

Examination of the two Supreme Court decisions, supra, on this subject fails to re-veal support for this broad proposition. What the Court does hold is that " 'value to the recipient' is . . . the measure of the authorized fee," 415 U.S. at 342–43, 94 S.Ct. at 1150, and that to the extent that the Commission expended moneys for the "public policy or interest . . . and other pertinent facts," 415 U.S. at 343, 94 S.Ct. at 1150, such expenses could not be recovered from those regulated by the agency. The Court quoted a statement from the legislative history which indicated that the cost of granting a "franchise," and the cost of services which result in "protection" of franchise holders (presumably apart from protecting the public), were examples of benefits to recipients which were of value to them and for which they could be required to pay. In connection therewith, the statement observed that the recipient "should pay some of the cost of the hearings." 415 U.S. at 342–43, 94 S.Ct. at 1150. See note 17 infra. This indicates the Court recognized that the problem involved separating out the costs of issuing the franchise and of protecting it from operational interference, and of collecting for such expenses as distinguished from "costs [of services which] inured to the benefit of the public."

Therefore it is clear that under NCTA expenditures made to benefit the public are required to be excluded from a proper fee. 415 U.S. at 341–43, 94 S.Ct. 1146. But the Court has not held that no fee can be assessed in situations which partially benefit the public. To the contrary, it explicitly recognized that "some of the costs [of the FCC regulation of the cable television industry] inured to the benefit of the public, unless the entire regulatory scheme is a failure, which we refuse to assume," 415 U.S. at 343, 94 S.Ct. at 1150, but held that a fee related to costs could still be assessed against the private recipient so long as it was measured by a "value to the recipient" standard and the cost of providing public benefits was excluded. 415 U.S. at 342–44, 94 S.Ct. 1146.

Application of that principle to these cases presents difficult practical questions

on matters about which the record contains insufficient data. Because of that void, a detailed analysis by this court of the problems involved is impossible. We can, however, provide some *general* guidelines for the Commission which we see as being presented by the discernable facts.

■ First, we interpret the Court's language in *NCTA* to require a certain nexus, a threshold level of private benefit, between the regulatee and the agency before a fee can be assessed against the recipient of the service:

> A fee, however, is incident to a voluntary act, *e. g.,* a request that a public agency permit an applicant to practice law or medicine or construct a house or run a broadcast station. *The public agency performing those services normally may exact a fee for a grant which, presumably, bestows a benefit on the applicant, not shared by other members of society.*

**11.** Budget Circular No. A-25 (issued Sept. 23, 1959) (J.App. Q-1).

**12.** The Commission's position on this point, as stated in its Further Notice of Proposed Rulemaking on the 1975 fee schedule, is very close to what we have just stated:

> *This Further Notice proposes a revised schedule of fees whereby only those activities that are specifically identified as primarily benefitting identifiable recipients will be included as costs in the fee program. The costs of those activities which either cannot be identified as specifically benefitting identifiable recipients, or which can be identified as primarily benefitting the general public will not be recouped through collection of fees.* The Commission does not consider that either Title V or the *NCTA* decision establishes mutually exclusive categories of services, i. e., the Commission is not limited to charging fees for services which solely benefit the recipients of those services. Such a view would render Title V a nullity because the very basis for the establishment of the Commission was the protection of the public interest in wire and radio communication, and public interest considerations are thus an inherent part of all Commission activities. It is our view that the Commission is authorized to charge fees for those services that provide a value to identifiable recipients, which we have identified as activities associated with processing of applications that provide

415 U.S. at 340–41, 94 S.Ct. at 1149 (emphasis added). This only means that the private recipient must be "identifiable" or, to state it another way, that no fee should be charged to a private party *"when the identification of the ultimate beneficiary is obscure* and the service can be primarily considered as benefitting broadly the general public." This language, taken from a Bureau of the Budget Circular,[11] was approvingly quoted by the Supreme Court in *New England Power,* where the Court stated "[w]e believe that is the proper construction of the [IOAA]." 415 U.S. at 350–51, 94 S.Ct. at 1154–1155.[12]

■ Second, the FCC can include in the cost basis of its fees only those expenses which the agency incurs to confer value on the payor. In *National Cable,* we explained that the "value conferred" measure of a valid fee means that the fee assessed cannot exceed the cost of the service rendered, thus prohibiting fees—such as the tariff filing fees here[13]—which increase with the

authorization for individuals, for example, to operate radio transmitters, or sell radio equipment, or collect common carrier charges. The fact that the general public may also benefit by Commission authorization of such activities, in that the activities may directly or indirectly provide a service to the public, does not limit the Commission's authority to charge a fee to the recipients of the services that will allow those services provided by the Commission to be operated on a self-sustaining basis as mandated in Title V.

48 F.C.C.2d 402, 404 (1974) (emphasis added). The term "primarily" is misleading, and we reject any suggestion that the Commission should be limited to charging fees for those services where the benefit to the private party is greater than the benefit to the public; but with that word eliminated, we endorse the agency's language. In this respect we note that later discussions of this issue by the Commission drop the word "primarily." *See, e. g.,* 50 F.C.C.2d 906, 908 (1975).

**13.** The fee schedule for tariff filings is as follows:

| Tariff Filings: | Annual Gross Revenue of Issuing Carrier: | |
|---|---|---|
| Each tariff page, | Under $1 million | $ 50 |
| original or revised, | $1 million to $100 million.. | 100 |
| filed pursuant to | $100 million to $1 billion.... | 300 |
| Part 61 of the | $1 billion to $10 billion..... | 500 |
| Commission's Rules. | Over $10 billion | 700 |

revenues or profits of the payor without reflecting a reasonable relationship to the actual cost of rendering the service.[14] This principle also requires that a fee only charge for those expenses which are necessary to service the applicant or grantee. Expenses incurred to serve some *independent* public interest cannot, under *NCTA*, be included in the cost basis for a fee, although the Commission is not prohibited from charging an applicant or grantee the full cost of services rendered to an applicant which also result in some incidental public benefits.

A hypothetical example will illustrate our meaning. If the Commission, in granting an equipment type approval under 47 U.S.C. § 302a (1970) and 47 C.F.R. § 2.803 (1975), is required to incur expenses for testing or inspection, such expenses can be charged in full to the applicant. These activities have undisputed private benefits although they may also create incidental public benefits as well.[15] But if the agency were to engage in further activity to determine whether a piece of equipment which has already been found to have no potential for creating "harmful interference" under section 302a meets standards for consumer safety it would be doing so to satisfy some independent public interest, and the charge

for these additional expenses could not be included in fees imposed on equipment owners. Although there may be some private benefit in safety testing, it is not a part of the service the agency must render to the manufacturer in order for him to comply with the statute: the additional tests serve an independent public interest, with only incidental private effects.

■ This holding effectively disposes of the arguments. of petitioners that no fee can be assessed for tariff filings or for equipment testing and approval. Both activities are required by statute, and the FCC is entitled to charge for services which assist a person in complying with his statutory duties. Such services create an independent private benefit. Tariff filings are required by 47 U.S.C. § 203(a) (1970) and provide a means for the carrier to obtain its revenues and to regulate subscriber use of its facilities. Although this statute was enacted in order to protect the public against excessive or unreasonably discriminating or preferential charges,[16] that result is only an incidental benefit from the *service* which is rendered by the agency, *i. e.*, assisting the carriers in complying with the statute. Similarly, equipment certification, acceptance, and approval is required by 47

47 C.F.R. § 1.1113 (1975) (footnote eliminated). The Commission's justification for using a sliding scale based on gross revenue is that "the larger carriers . . . generate proportionately greater interstate and foreign revenues from tariffs than do the carriers of lesser size. . . ." 50 F.C.C.2d 906, 915–16 (1975). *See also* 52 F.C.C.2d 333, 339 (1975). Since this measure has no apparent relation to the cost of the services rendered, unless adequate justification is shown on remand, it is invalid under our holding today in *National Cable Television Assn. v. FCC*, 180 U.S.App.D.C. —— at —— ——, 554 F.2d 1094 at 1107–1108 (1976).

**14.** *National Cable Television Assn. v. FCC*, 180 U.S.App.D.C. —— at —— ——, 554 F.2d 1094 at 1107–1108 (1976).

**15.** *See* text *infra*, 180 U.S.App.D.C., at ——, 554 F.2d, at 1115–1116.

**16.** Section 203 of the Communications Act of 1934, 48 Stat. 1070, *codified as* 47 U.S.C. § 203

(1970), which requires tariff filings, is based upon section 6 of the Interstate Commerce Act, 24 Stat. 380–81 (1887), *codified as* 49 U.S.C. § 6 (1970). 78 Cong.Rec. 10313 (1934) (statement of Cong. Rayburn). Section 6 of the Interstate Commerce Act, which applies only to transportation, was clearly enacted to remedy rate discrimination. *See* 17 Cong.Rec. 3471 (1886) (statement of Sen. Collum); 17 Cong.Rec. 7281 (1886) (statement of Cong. Reagan); *Kansas City Southern Ry. v. C. H. Albers Comm'n Co.*, 223 U.S. 573, 32 S.Ct. 316, 56 L.Ed. 556 (1912); *New York, New Haven & Hartford R. R. v. ICC*, 200 U.S. 361, 391, 26 S.Ct. 272, 50 L.Ed. 515 (1906); *Atchison, Topeka & Santa Fe Ry. v. Bouziden*, 307 F.2d 230, 234 (10th Cir. 1962). Section 203 of the Communications Act has a similar purpose. *A T & T v. FCC*, 503 F.2d 612, 616 (2d Cir. 1974). *Cf. Duetsche Lufthansa Aktiengesellschaft v. CAB*, 156 U.S.App.D.C. 191, 198, 479 F.2d 912, 919 (1973).

U.S.C. § 302a (1970) and 47 C.F.R. § 2.803 (1975), and assists the manufacturer in marketing a quality product and gives him credibility in the market place. Other commission fees at issue in this case can be justified by the statutory requirement of a permit for construction of new or extended lines or the discontinuance of service by a common carrier, 47 U.S.C. § 214 (1970), and by the requirement of an operating license and station construction permit under 47 U.S.C. §§ 301, 319 (1970).

However, it remains to be seen whether the Commission can justify charging fees in the amount it has attempted to do in the 1975 fee schedule. For example, it strains the limits of credulity to value the services rendered to applicants or grantees at 94 percent of the annual budget of the Common Carrier Bureau. Surely more than six percent of the work of that bureau had justifications independent of the services rendered to private parties. We therefore direct the Commission to reexamine and *explain* the basis for its allocation of costs.

### III.

A second significant question raised by the petitioners in this action is how far the Commission must break down the costs which form the basis for its fees. It is argued that the FCC is wrong in apportioning the total costs of common carrier regulation among the whole mass of common carriers because the amount of work and the complexity of problems presented by applications, filings, and authorizations varies greatly between classes of carriers. National Assn. of Radiotelephone Systems (NARS) Brief at 14–15. For example, an application for new facilities made by AT & T might be much more complex than a similar application made by a small independent telephone company or a radio common carrier (RCC). Or, possibly such an AT & T application, because of their much greater frequency and similarity, might require less processing. Also, it is contended that some classes of carriers in practice do not utilize particular activities. Thus, NARS argues that there are few, if any,

hearings on RCC tariff rates because RCC's are required to file tariffs only if their coverage areas cross state lines, and yet under the present fee schedule the costs of holding such hearings are apportioned among all classes of carriers, including RCC's. NARS Brief at 25.

■ Initially, we note that the Commission has shown some sympathy for this argument, with the result that it attempted to make certain fees (in the instant case, tariff filing fees) vary with the revenue of the applicant. The problem with this collection scheme was not its intention but the means chosen to effect it. We have today held that, unless graduated fees are clearly related to graduated costs, it may be improper to measure a fee solely according to the revenues of the payor. *See* note 13 *supra.* However, we see no objection to a sliding scale using a proper measure—*i. e.,* the cost of work performed or value conferred on the recipient. Whether it is feasible to separate the Commission's activities into various classes based on increasing costs and complexity, we do not know. If the agency can do so, such a fee schedule would be valid under the statute.

■ In any case, we interpret the statute and the Supreme Court decisions to require reasonable particularization of the basis for the fees, accomplished by an allocation of costs to the smallest unit that is practical. In most cases, we expect this unit will be classes of carriers or applicants or grantees or services which the Commission has already singled out for separate treatment in its 1975 fee schedule. Classification is always a difficult problem, involving as it does the drawing of lines; but the solution is not to group dissimilar entities together. The Commission must examine its expenses and set forth the maximum particularization of costs which it conveniently can make, so that the correctness of its actions can be reviewed.

Here again, because of the bare record before us, we are able to give the agency only the most general guidance. Many of the expenses will no doubt separate naturally among classes of carriers and services,

and others will be easily apportioned on this basis. Some expenses, however, may be more appropriately charged to individuals, and the Commission may wish to consider setting separate fees for those activities. For example, a substantial portion of the expenses of the administrative law judges (ALJ's) and certain hearing expenses [17] are perhaps most fairly charged to those individuals whose applications and acts require the hearings. Also, there may be justification for apportioning part of the cost of an activity to regulated companies or individuals who make little use of that service, if the Commission finds that expenses were nonetheless incurred in maintaining a competent staff to perform the essential service when it is furnished.

## IV.

In conclusion, we will attempt to summarize the major requirements which we have today decided must be met by the Commission when it reviews its fee schedule on remand. First, the Commission must *justify* the assessment of a fee by a clear statement of the particular service or benefit which it is expected to reimburse. Second,

it must calculate the *cost basis* for each fee assessed. This involves (a) an allocation of the specific direct and indirect expenses which form the cost basis for the fee to the smallest practical unit; (b) exclusion of any expenses incurred to serve an independent public interest; and (c) a public explanation of the specific expenses included in the cost basis for a particular fee, and an explanation of the criteria used to include or exclude particular terms. Finally, the Commission must set a fee calculated to return this cost basis at a *rate* which reasonably reflects the cost of the services performed and value conferred upon the payor. The fees may be imposed only on beneficiaries of agency services who satisfy the criteria of *NCTA* and *New England Power.*

We are very cognizant of the extreme difficulty of this task—which resembles unscrambling eggs—but, as we interpret the law, it is necessary in order to bring the agency into compliance with the statute and the Supreme Court decisions. We therefore remand this case to the FCC for recalculation of its 1975 fee schedule. In doing so, it is not our intent that our remand be narrowly interpreted as requiring

17. Several petitioners object to the inclusion in the basis for the various fees of the costs of Commission hearings held in connection with permits required for the extension of lines or discontinuance of service under 47 U.S.C. § 214 (1970), operating licenses required under 47 U.S.C. § 301 (1970), and construction permits and licenses for operation provided for by 47 U.S.C. § 319 (1970). The argument made is that the applicant seeks a grant of a license or permit rather than a hearing, and that the hearing is not a "benefit" but a hurdle the applicant must surmount before obtaining his license or permit. The statutes cited above, however, each contemplate a hearing as part of the process of issuing the license or permit. *See* 47 U.S.C. §§ 214(b), 214(d), 309(e) (1970). Although the applicant might prefer to dispense with the hearing, it is as integral a part of the procedure which is set in motion by the application, as is the mechanical handling of the paper (which one might also choose to eliminate in the interest of saving money). The agency is not limited to charging for activities that are beneficial to an applicant, but can include in its fee the cost of any service that is necessarily rendered to him.

The other argument raised against the inclusion of the cost of all hearings in the cost basis of the fees for each bureau is that it in effect

requires applicants to pay the litigation costs of the opposing party contrary to the holding of *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). There is some substance to this argument. However, we today suggest that parties to hearings before the FCC be charged a separate fee approximately equal to the costs incurred on their account in the hearings. If it proves practical to do this, in whole or in part, the extent to which one party will pay his opponent's litigation costs will be greatly reduced if not eliminated. If not, the Commission can consider the objection. As for the extent to which the expenses of the Commission's trial staff might be included in the costs allocated to various fees, we note that in many hearings the trial staff presumably represents an independent public interest, and some or all of their expenses might therefore be excluded from the basis of the fees under the principles set out in this case. But this practice may vary with the agencies and the type of hearings involved. We suggest this question to the FCC for consideration on remand. The record here does not contain sufficient factual detail to permit us to be more explicit.

only a review of the particular fees at issue herein; rather, we consider that a general review of the *entire* schedule is required.

*Judgment accordingly.*