AYUDA, INC., et al., Appellants,

v.

ATTORNEY GENERAL.

No. 87–5175.

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 8, 1988.

Decided June 10, 1988.

Charles Gordon, Washington, D.C., for appellants.

Charles F. Flynn, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., John D. Bates and R. Craig Lawrence, Asst. U.S. Attys., were on the brief, Michael J. Ryan, Asst. U.S. Atty., Washington, D.C., for appellee.

Before STARR and SILBERMAN, Circuit Judges, and GREENE,* District Judge.

Opinion for the Court filed by Circuit Judge STARR.

Concurring opinion filed by Circuit Judge SILBERMAN.

STARR, Circuit Judge:

This appeal raises questions concerning the legality of certain fees charged by the Immigration and Naturalization Service in connection with several of that agency's adjudicatory procedures. For the reasons that follow, we affirm the judgment of the District Court upholding the legality of the fees.

I

In January 1986, the Immigration and Naturalization Service (INS) and the Executive Office for Immigration Review concluded an extensive review of the fees charged by INS for various services. The upshot was INS' publication of a proposed rule to amend the agency's fee schedule. 51 Fed.Reg. 2895 (1986) (to be codified at 8 C.F.R. § 103.7). INS sought to ensure that its fees, which had been in effect for a considerable period,[1] reflected the actual costs of providing the service involved. After consideration of comments on its proposals, INS promulgated a final rule altering the agency's fees for six different services. 51 Fed.Reg. 39993–94 (1986). Under the new schedule, four fees are increased while one is decreased and another is eliminated.[2]

Appellants filed suit in federal district court, challenging three of the revised fees: (1) the increase from $70 to $125 for filing an application for a stay of a final deportation order; (2) the increase from $50 to $110 for filing an appeal with the Board of Immigration Appeals; and (3) the increase from $50 to $110 for filing a motion to reopen or reconsider a decision of an immigration judge or the Board of Immigration Appeals. Briefly stated, appellants argued that the Attorney General lacks authority to impose fees for the services in question and that, even if fees were legally permissible, the specific fees under challenge were arbitrarily excessive.[3]

---

\* Of the United States District Court for the District of Columbia, sitting by designation pursuant to 28 U.S.C. § 292(a).

1. The INS fee schedule has been challenged previously; none of these earlier suits, however, gave rise to a reported opinion addressing the issues presented here. *See* Brief for Appellants at 10; Joint Appendix (J.A.) at 33–34, 41–43.

2. The changes in the fee schedule are the following: (1) a decrease from $50 to $35 in the fee for filing a petition to classify preference status of an alien on the basis of profession or occupation; (2) an increase from $70 to $125 in the fee for filing an application for a stay of deportation; (3) an increase from $75 to $100 in the fee for filing an application for suspension of deportation; (4) an increase from $50 to $110 in the fee for filing an appeal from any decision under the immigration laws in any proceeding (except a bond decision) over which the Board of Immigration Appeals has appellate jurisdic-

tion; (5) an increase from $50 to $110 in the fee for filing a motion to reopen or reconsider any decision under the immigration laws, with certain exceptions; and (6) elimination of the $50 fee for filing a request for temporary withholding of deportation. 51 Fed.Reg. 39993–94 (1986).

3. The District Court held that the two plaintiffs have standing to challenge the fee increases. *Ayuda, Inc. v. Attorney General,* 661 F.Supp. 33, 34 n. 1 (D.D.C.1987). The court expressly noted the averments in the complaint, in which the two organizations allege, *inter alia,* that imposition of the increased fees would thwart their organizational purposes and subject them to additional financial burdens. J.A. at 12. The Government did not dispute these representations either in the trial court or on appeal. Based upon the colloquy at oral argument, we are satisfied that the District Court did not err in concluding on this record that standing requirements were satisfied.

The District Court rejected appellants' contentions. *Ayuda, Inc. v. Attorney General,* 661 F.Supp. 33 (D.D.C.1987). The court concluded, first, that the Attorney General enjoys authority to impose fees for immigration proceedings under the Independent Offices Appropriations Act (IOAA or user-fee statute), 31 U.S.C. § 9701 (1982) (originally codified at 31 U.S.C. § 483a); second, that the alleged deterrent effect of the increased fees on the ability of aliens to pursue their rights was unsupported by concrete evidence and mitigated by the provision for waiver of fees for aliens who certify their inability to pay;[4] third, that the increased fees readily withstood appellants' arbitrary-and-capricious challenge in view of the two-year, agency-wide process of review, complete with elaborate cost accounting and notice-and-comment procedures; and finally, that the failure of other agencies to charge for similar services was irrelevant. Each agency, the court observed, is at liberty to make its own decisions with respect to the imposition of fees. *Id.* at 35–36. This appeal followed.

## II

The principal issue on appeal is whether the IOAA provides the requisite authority for imposition of the fees under challenge.[5] Appellants argue, in essence, that the INS services in question are not within the compass of the standard, "service or thing of value," articulated in the user-fee statute.[6] Administrative appeals and stays, their argument runs, are unlike such classic examples of user fees as fees for licenses and registrations. Appellants point to the IOAA's legislative history, which identifies licenses, franchises, and the like as the type of "thing of value" contemplated by the statute. S.Rep. No. 2120, 81st Cong., 2d Sess. (1950); H.R.Rep. No. 384, 82d Cong., 1st Sess. (1951).

Appellants' argument is not without force. At first blush, it seems odd to require payment of a fee before the agency will review its own determinations or consider staying the effect of its decisions. This oddity is all the more pronounced in view of the apparent failure of other agencies to impose similar regimes. On reflection, however, we are unable to embrace appellants' interpretation of the IOAA, whose broad terms have heretofore received a consistently generous reading in this court.

We begin our interpretive inquiry mindful of the elementary tenet that it is the statute that constitutes law.[7] *Consumer Product Safety Comm'n v. GTE Sylvania,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980) ("Absent a clearly ex-

---

**4.** Appellants intimate that the waiver provision, 8 C.F.R. § 103.7(c)(1) (1986), does not in fact mitigate the deterrent effect of the increased fees because the Attorney General retains discretion to decline to waive the fees even after an applicant has demonstrated his or her inability to pay. We have been directed to no evidence, however, that the Attorney General has in fact exercised his discretion in this manner. We thus find no error in the District Court's reasoning in this respect. *See also infra* note 5. We observe, however, that denial of a waiver for an indigent alien might well raise due process questions, particularly if the Government were to argue that the indigent alien's ensuing failure to exhaust administrative remedies precluded judicial review of the deportation order.

**5.** Judge Gesell's opinion ably addresses appellants' other contentions, and we therefore observe with approbation the reasons advanced by the District Judge in support of his conclusions. Similarly, since the District Court found it unnecessary to address 8 U.S.C. § 1103 (1982), the second statute cited by the Attorney General as authority for imposition of the fees, we likewise have no occasion to do so.

**6.** The IOAA, 31 U.S.C. § 9701 (1982), provides in pertinent part as follows:

(a) It is the sense of Congress that each service or thing of value provided by an agency ... to a person ... is to be self-sustaining to the extent possible.

(b) The head of each agency ... may prescribe regulations establishing the charge for a service or thing of value provided by the agency.... Each charge shall be—

(1) fair; and

(2) based on—

(A) the costs to the Government;

(B) the value of the service or thing to the recipient;

(C) public policy or interest served; and

(D) other relevant facts.

**7.** An illuminating example of the persuasive rationale for this general rule can be found in *Hirschey v. FERC,* 777 F.2d 1, 7 n. 1 (D.C.Cir. 1985) (Scalia, J., concurring).

pressed legislative intention to the contrary, [the language of a statute] must ordinarily be regarded as conclusive."); *American Civil Liberties Union v. FCC,* 823 F.2d 1554, 1568 (D.C.Cir.1987) (per curiam) ("[I]t is beyond cavil that the first step in any statutory analysis, and our primary interpretive tool, is the language of the statute itself.") Here, the statute by its express terms sweeps with considerable breadth. "[S]ervice or thing of value" is broad language indeed.

Although the legislative history helpfully points out Congress' general purpose in passing the statute,[8] that history does not purport to limit the statute's scope. *See* S.Rep. No. 2120, *supra* p. 5; H.R.Rep. No. 384, *supra* p. 5; *cf. American Civil Liberties Union,* 823 F.2d at 1567–70. The only potentially delimiting indication in the background Congressional materials is the listing of various benefits for which fees may appropriately be charged. To take the most pertinent sampling, the Senate Report lists (or, more precisely, discusses) the issuance of operating permits, S.Rep. No. 2120, *supra* p. 5, at 4, certificates of convenience and necessity, *id.* at 9, licenses, *id.* at 11, and visas and passports, *id.* at 14, as examples of services for which fees may appropriately be assessed. But we can discern in this enumeration no indication that these examples were intended by Congress to exhaust the potential objects of fee assessment. To the contrary, the Reports quite plainly express the *illustrative* function of the examples cited. *See, e.g., id.* at 4 ("a few illustrative examples are provided"); H.R.Rep. No. 384, *supra* p. 5, at 3 ("fees could be charged for other services of ... types" similar to the type here under consideration). Congressional illustrations cannot, in fairness, be equated with implied limitations on a statute that the Article I branch has seen fit to craft broadly.

Happily, we need not rely heavily on our own lights in the interpretive process, for we do not write on a blank slate. To the contrary, the blackboard contains a goodly measure of pertinent instruction; our prior cases teach unmistakably that the phrase "service or thing of value" is to be construed broadly. *See National Cable Television Ass'n v. FCC,* 554 F.2d 1094, 1101 (D.C.Cir.1976) (protection of cable operations would be sufficient benefit to justify imposition of fees); *Electronic Industries Ass'n v. FCC,* 554 F.2d 1109, 1115 (D.C.Cir.1976) (equipment type approval from the FCC confers special benefit and cost may be charged in full to recipient). Indeed, our court has interpreted the statute as encompassing fees levied on regulated entities in filing tariffs that they are required by law to file. *Id.* In so holding, our court reasoned that enabling regulated firms to comply with their statutory obligations constituted the provision of an independent private benefit sufficient to bring the agency's fee within the IOAA's broad compass.

This circuit's generous interpretation of the user-fee statute followed in the wake of the Supreme Court's explication of the IOAA's proper scope. In *Federal Power Comm'n v. New England Power Co.,* the Court held that the IOAA authorizes "a reasonable charge" to be made to " 'each *identifiable recipient* for a measurable unit or amount of Government service or property from which [the recipient] derives a special benefit.' " 415 U.S. 345, 349, 94 S.Ct. 1151, 1154, 39 L.Ed.2d 383 (1974) (quoting Bureau of the Budget Circular No. A–25 (Sept. 23, 1959)). Such fees may be assessed even when the service redounds in part to the benefit of the public as a whole. *National Cable Television Ass'n v. United States,* 415 U.S. 336, 343–44, 94 S.Ct. 1146, 1150, 39 L.Ed.2d 370 (1974); *accord National Cable Television Ass'n v. FCC,* 554 F.2d at 1103–04; *Elec-*

---

**8.** Congress' aim in passing the IOAA is captured in the Senate Report prepared a year before introduction and passage of the actual legislation—fees should be charged for agency services the benefits of which accrue wholly or primarily to special beneficiaries. S.Rep. No. 2120, *supra* p. 5, at 3–4. Believing that "the Govern-

ment [was] not receiving full return from ... services which it renders to special beneficiaries," H.R.Rep. No. 384, *supra* p. 5, at 2, Congress sought to remedy the problem by authorizing full recovery for services provided to identifiable beneficiaries.

*tronic Industries Ass'n,* 554 F.2d at 1113–14. So long as the service provides a special benefit, above and beyond that which accrues to the public at large, to a readily-identifiable, individual, the fee is permissible. *New England Power,* 415 U.S. at 349–51 & n. 3, 94 S.Ct. at 1154–55, n. 3.

■ In light of settled law, we are constrained to conclude that the INS fees at issue are for a "service or thing of value" which provides the recipients with a special benefit. To be sure, the public generally has a keen interest in the correctness of administrative decisions. Error should indeed be corrected, if error there be. But that, fairly viewed, is part of the broad public concern with the fair and proper administration of the far-flung operations of government. *See Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.,* 435 U.S. 519, 543, 98 S.Ct. 1197, 1211, 55 L.Ed.2d 460 (1978). Here, we are presented with specific procedural devices that redound to the obvious, substantial, and direct benefit of specific, identifiable individuals, individuals who have themselves invoked those procedures. *See National Cable Television Ass'n v. United States,* 415 U.S. at 340, 94 S.Ct. at 1149 ("[a] fee ... is incident to a voluntary act"); *cf. New England Power,* 415 U.S. at 351, 94 S.Ct. at 1155 (companies "neither asked for nor received the Commission's services" and thus could not be said to have received a special benefit). Since these procedures are triggered only at the instance of the individual who seeks, obviously, to benefit from them, this fee regime cannot in fairness be characterized as an INS effort to charge for activities that are carried on principally to benefit the public generally. The benefit is simply too direct and immediate to a specific, identifiable beneficiary to consider such services as constituting primarily a broad part of INS' overall mission to serve the public.

Both the breadth of the statute's language and the courts' generous reading of the provision in question lead us to the view that the District Court's conclusion was correct. The judgment appealed from is therefore

*Affirmed.*

SILBERMAN, Circuit Judge, concurring:

I concur in Judge Starr's opinion notwithstanding some doubt that an opportunity to appeal a deportation order is a "service or thing of value provided by the agency" to which user fees could be affixed. Our prior cases do, however, as Judge Starr ably demonstrates, sweep very broadly in interpreting that language, and I do not see how one can draw a principled distinction between those cases and this one.