# UNITED STATES COURT OF INTERNATIONAL TRADE

<table>
<tr><td>

MARK T. ANDERSON,

                      Plaintiff,

v.

U.S. SECRETARY OF AGRICULTURE,

                      Defendant.

</td><td>

**Before: Gregory W. Carman, Judge**

Court No. 05-00267

</td></tr>
</table>

[Defendant's Motion to Recaption is denied.]

       Mark T. Anderson, Plaintiff, pro se.

       Peter D. Keisler, Assistant Attorney General; David M. Cohen, Director; Patricia M. McCarthy, Assistant Director; Delfa Castillo and Mark T. Pittman, Trial Attorneys, U.S. Department of Justice, Civil Division, Commercial Litigation Branch; Jeffrey Kahn, of counsel, Office of the General Counsel, International Affairs & Commodity Programs Division, U.S. Department of Agriculture, for Defendant.

                                           July 31, 2006

## OPINION & ORDER

       This matter is before this Court on Defendant's Motion to Recaption Case ("Defendant's Motion"). Upon consideration of Defendant's Motion, Plaintiff's response, and the record before the Court, Defendant's motion is denied.

**PROCEDURAL HISTORY**

On January 16, 2002, Plaintiff, Mark T. Anderson, applied for Trade Adjustment

Assistance ("TAA") as an individual producer. (Admin. R. Doc. 1.) Plaintiff's name and

address are typewritten on the application form as "producer." In the same "producer" space on

the application form, "St. Patrick Inc." has been handwritten. Both Mr. Anderson's social

security number and St. Patrick Inc.'s tax identification number have also been handwritten on

the application form.

On January 16, 2004, Plaintiff submitted a form Farm Operating Plan for Payment

Eligibility Review for an Individual ("Operating Plan") (Admin. R. Doc. 2 (emphasis added))

and form Highly Erodible Land Conservation (HELC) and Wetland Conservation (WC)

Certification (Admin. R. Doc. 3). In both forms, Plaintiff identified "Mark T. Anderson" as the

name of the producer. Only Plaintiff's Social Security Number is provided on the Operating Plan

(Admin. R. Doc. 2) and used as the identification number on the HELC and WC Certification

(Admin. R. Doc.3). Also on January 16, 2004, Plaintiff submitted to the Skagit County Farm

Service Agency ("FSA") a purchase summary for salmon catch he sold in his own name to

Norquest, Inc., in 2002. (Admin. R. Doc. 15.)

On March 17, 2004, the FSA sent Plaintiff a letter notifying him that he was "one

'person' for payment limit purposes, separate and distinct from any other individual or entity."

(Admin. R. Doc. 4 (emphasis added).) The FSA "person" determination form identifies that the

question concerning a corporation is not applicable. (Admin. R. Doc. 5, No. 6(J).) The "person"

determination form also notes that the "[p]roducer is an <u>individual</u> who is a U.S. citizen." (<u>Id.</u>,

No. 7(C) (emphasis added).)

On April 7, 2004, Plaintiff submitted a TAA Technical Assistance Certification form to

the Skagit County FSA. (Admin. R. Doc. 14.) On April 26, 2004, the FSA sent Plaintiff a "Final

Notice" requesting additional documentation in support of Plaintiff's TAA benefits claim.

(Admin R. Doc. 13.) The Final Notice includes a handwritten note that states

> If you are applying under your corp[oration] only[,] then I will need the page from
> your 1120S tax return[,] which shows the income is from fishing. If you are
> applying under your name[,] then we will need the schedule C from your 1040 tax
> return.

(<u>Id.</u>) The Administrative Record contains the 2001 and 2002 tax year 1120S forms for St.

Patrick Inc. and the Form 1120S Schedule K-1 forms for the same years, which identify Plaintiff

as "shareholder." (Admin. R. Docs. 7-12.) FSA apparently received the St. Patrick Inc., tax

forms on March 12, 2004. (Admin. R. Doc. 17.)

A handwritten note in Plaintiff's file indicates that an FSA employee talked to Plaintiff on

May 5, 2004. (Admin R. Doc. 6.) During the conversation, Plaintiff apparently mentioned that

"he received a salary from the corp[oration,] and it did not reflect a [percentage] of the catch."

(<u>Id.</u>) The note then states that the "application should be under corp[oration] only." (<u>Id.</u>)

On July 13, 2004, the FSA sent Plaintiff (not St. Patrick Inc.) a letter notifying Plaintiff

that his request for TAA benefits had been denied. (Admin. R. Doc. 19.) The letter states that

"the Area Committee denied your request for assistance due to the fact that your net fish income

increased in 2002 from 2001 income." (<u>Id.</u>) The letter also notifies Plaintiff that "this issue is

<u>not appealable</u>." (<u>Id.</u> (emphasis added).) A July 15, 2004, printout from the FSA Intranet

identifies Plaintiff as the TAA applicant.  (Admin. R. Doc. 21.)  On July 29, 2004, the July 13, 2004, denial letter was returned to the FSA as undeliverable.  (Admin. R. Doc. 18; see also Admin. R. Doc. 23.)

On January 12, 2005, the FSA issued another denial letter addressed to "St. Patrick, Inc. % [sic] Mark Anderson."  (Id.)  The letter informed the recipient that the FSA disapproved the 2002 application for a TAA cash benefit.  The letter states that "[y]ou have been denied a TAA cash benefit because your 2002 net fishing income did not decline from the latest year in which no adjustment assistance payment was received (2001)."  (Id.)  The letter's recipient was also advised that the denial of TAA cash benefit was appealable to this court.

On March 8, 2005, Plaintiff filed a letter complaint with this court requesting review of the FSA denial of his application for TAA benefits.  Defendant filed its Answer on May 31, 2005.  On November 30, 2005, Plaintiff filed his letter motion for judgment on the agency record.  Defendant failed to file a response to Plaintiff's motion.  Instead, on January 26, 2006, Defendant filed a consent motion for leave to file out of time Defendant's Motion to Recaption Case.  This Court granted leave to file Defendant's Motion out of time on February 7, 2006.  For the reasons stated herein, this Court denies Defendant's Motion.

**PARTIES' CONTENTIONS**

A.      Defendant's Contentions

The United States Secretary of Agriculture ("Agriculture") contends that, although the initial application for TAA benefits is unclear about the party applying for benefits, FSA's "final

notice, dated April 26, 2004, requested that Mr. Anderson clarify whether he or his corporation

was the applying producer–by either submitting a U.S. Income Tax Return for an S Corporation,

Form 1120S, or his individual Form 1040." (Def.'s Mot. at 1-2.) By submitting only Form

1120S for St. Patrick Inc. (Plaintiff's wholly-owned corporation), Agriculture submits that Mr.

Anderson represented that the application for TAA benefits was on behalf of the corporation

only. (Id. at 2.) Agriculture also points to the notation in the Administrative Record that the

"application should be under corp[oration] only" (Admin. R. Doc. 6) as evidence that Mr.

Anderson intended that the application for TAA benefits be on behalf of St. Patrick Inc. (Def.'s

Mot. at 2.) Agriculture acknowledges that the first denial of benefits letter that FSA sent to

Plaintiff was addressed to Mr. Anderson, individually. (Id.) Nevertheless, Agriculture argues

that it is sufficient support for its motion that the "final TAA denial" of benefits was addressed to

St. Patrick Inc., in care of Plaintiff. (Id.) Agriculture concludes that "because St. Patrick, Inc[.]

was the applying producer whose TAA application was denied, only the corporation may appeal

this matter." (Id.)

If its motion is granted, Agriculture also requests that the court direct St. Patrick, Inc. that

it must obtain legal counsel, in accordance with this court's rules, before proceeding with this

matter. (Id. at 2-3.)


B.      Plaintiff's Contentions

On February 19, 2006, Plaintiff submitted a two-page letter response to Defendant's

Motion ("Plaintiff's Response"). Plaintiff notes that only one document in the Administrative

Record was addressed to St. Patrick, Inc. (Admin. R. Doc. 23), and that document is not–as

Agriculture contends–the final denial of TAA benefits by FSA. (Pl.'s Resp. at 1.) According to

Plaintiff, the final denial of TAA benefits is recorded in the Administrative Record in the July 13,

2004, letter that was returned to FSA because it was sent to the incorrect address. (Id.) Plaintiff

explains that the January 12, 2005, denial letter is merely a reiteration of the July 13, 2004, denial

of TAA benefits. (Id.) Plaintiff insists that FSA sent the January 12, 2005, letter only after

Plaintiff called FSA to request an update on the status of his application. (Id.)

Plaintiff also stresses that at "**no time did [he] tell the agency to consider [his]**

**application on behalf of [his] corporation.**" (Id. (emphasis in original).) Plaintiff maintains

that he did not instruct FSA on May 5, 2004, that the application for TAA benefits should be on

behalf of the corporation. (Id.; see also Admin. R. Doc. 6.) Plaintiff surmises that an FSA staff

member added the notation to the TAA application file perhaps as a result over "confusion

surrounding the application process." (Pl.'s Resp. at 1.)

Plaintiff argues that recaptioning this case at this point "does nothing but avoid the issue

before the court which is was [he] fairly denied assistance or not." (Id.) Plaintiff notes that the

Administrative Record appears to be a "confusing mess." (Id. at 2.) Regardless, Plaintiff asserts

that indeed his salmon fishing income dropped between 2001 and 2002, and therefore, he met the

eligibility requirements for TAA benefits. (Id.)

**JURISDICTION**

This Court has jurisdiction over this matter pursuant to 19 U.S.C. § 2395(c) (Supp. III

2003).

**STANDARD OF REVIEW**

Upon appropriate review, as outlined below, this Court may affirm Agriculture's action

or set it aside, in whole or in part.  19 U.S.C. § 2395(c).  In addition, this Court may remand the

case to Agriculture when good cause is shown.  19 U.S.C. § 2395(b) (Supp. III 2003).  As

explained below, the Court applies a split standard of review to questions of fact and questions of

law.

A.      Questions of Fact

The court must accept the findings of fact made by Agriculture as conclusive if they are

supported by substantial evidence.  19 U.S.C. § 2395(b).  "Substantial evidence is more than a

mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion."  Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938) (citations

omitted).  "As long as the agency's methodology and procedures are reasonable means of

effectuating the statutory purpose, and there is substantial evidence in the record supporting the

agency's conclusions, the court will not impose its own views as to the sufficiency of the

agency's investigation or question the agency's methodology."  Ceramica Regiomontana, S.A. v.

United States, 10 CIT 399, 404-05, 636 F. Supp. 961 (1986) (citations omitted), aff'd, 810 F.2d

1137 (Fed. Cir. 1987).


B.        Questions of Law

Because the TAA statute is silent on judicial review of Agriculture's decisions on

questions of law, the court looks to the Administrative Procedure Act ("APA").  The APA directs

the court to "decide all relevant questions of law, interpret constitutional and statutory

provisions, and determine the meaning or applicability of the terms of an agency action."

5 U.S.C. § 706 (2000).  In conducting its review, the court must "hold unlawful and set aside

agency action, findings, and conclusions found to be–

> (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance
> with law;
> (B) contrary to constitutional right, power, privilege, or immunity;
> (C) in excess of statutory jurisdiction, authority, or limitations, or short of
> statutory right;
> (D) without observance of procedure required by law;
> (E) unsupported by substantial evidence in a case subject to sections 556 and 557
> of this title or otherwise reviewed on the record of an agency hearing provided by
> statute; or
> (F) unwarranted by the facts to the extent that the facts are subject to trial de novo
> by the reviewing court.

5 U.S.C. § 706(2)(A)-(F).

Section 706 sets forth six separate standards of review.  See Citizens to Preserve Overton

Park, Inc. v. Volpe, 401 U.S. 402, 413 (1971), rev'd on other grounds by Califano v. Sanders,

430 U.S. 99 (1977).  In Overton Park, the United States Supreme Court offered guidance on

when to apply these various standards.  Id. at 413-14.  The Supreme Court directed that when

reviewing agency actions subsections A through D always apply, but subsections E and F should only be applied in narrow, limited situations.  Id.; see also Hyundai Elecs. Indus. Co., Ltd. v. U.S. Int'l Trade Comm'n, 899 F.2d 1204, 1208 (Fed. Cir. 1990).  Since the agency action in question in this case neither arises out of a rulemaking provision of the APA nor is based on a public adjudicatory hearing, subsection E does not apply.  Overton Park, 401 U.S. at 414.  Subsection F de novo review is applicable only when (1) "the action is adjudicatory in nature and the agency factfinding procedures are inadequate," or (2) "issues that were not before the agency are raised in a proceeding to enforce nonadjudicatory agency action."  Id. at 415.

Although Agriculture's decision on a TAA application is adjudicatory in nature, the facts are not subject to trial de novo.  19 U.S.C. § 2395(b).  Rather, this Court must sustain Agriculture's findings of fact if supported by substantial evidence on the record.  Further, Plaintiff has not suggested, nor does this Court infer, that Agriculture's factfinding procedures were inadequate.  Thus, the standard of review set forth in subsection F is also inapposite.

In addition, none of the remaining standards of review in subsections B, C, or D is applicable in this matter.  Accordingly, this Court must apply the residual standard of review found in subsection A.  See In re Robert J. Gartside, 203 F.3d 1305, 1312 (Fed. Cir. 2000) ("courts have recognized that the 'arbitrary, capricious' standard is one of default").  The "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" standard is deemed the most deferential.  Id. ("this standard is generally considered to be the most deferential of the APA standards of review").  Courts have noted that "the 'touchstone' of the 'arbitrary, capricious' standard is rationality."  Id. (citing Hyundai, 899 F.2d at 1209).

To be sustained, "the agency must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983) (quotation & citation omitted). Thus, if this Court finds that Agriculture did not provide a cogent explanation for its decision, the Court will set aside that decision. Id. at 48.

## DISCUSSION

At the outset, the Court notes for the record that Plaintiff, unassisted by counsel, did an admirable job of articulating his position for the Court. The Court also appreciates the efforts of the government to work with Plaintiff throughout this process.

Upon a close examination of the matter before the Court, it appears that this Court is asked to review a mixed finding of fact and law made by Agriculture. The specific factual finding this Court is reviewing is Agriculture's determination that the application for TAA benefits in this case was made on behalf of the corporate entity St. Patrick, Inc. The specific legal determination made by Agriculture that the Court is asked to determine is that the proper party plaintiff to this matter is St. Patrick, Inc., rather than Mr. Anderson.

A.      Question of Fact

The Court agrees with Plaintiff that the Administrative Record in this case appears confusing. However, it is clear that the only formal indication by Agriculture that St. Patrick, Inc. was the applicant for TAA benefits is the January 12, 2005, letter. (Admin. R. Doc. 23.)

The Court also agrees with Plaintiff that FSA's July 13, 2004, denial letter represents FSA's final determination that Plaintiff was not entitled to TAA benefits because his "net fish income increased in 2002 from 2001 income." (Admin. R. Doc. 19.) For purposes of the FSA determination, it is inconsequential that Plaintiff did not receive the July 13, 2004, denial letter.[1]

At the time FSA sent the July 13, 2004, letter to Plaintiff, the agency had arrived at its final decision on the applicant's eligibility for TAA benefits. On July 15, 2004, the FSA Intranet site indicates that Plaintiff's application for TAA benefits was "disapproved." (Admin. R. Doc. 20.) The only subsequent agency document in the Administrative Record is the January 12, 2005, letter. Between July 15, 2004, and January 12, 2005, Agriculture received no additional information from Plaintiff, noted no further contact with Plaintiff, indicated no change in Plaintiff's application, and recorded no explanation for its decision to depart from its prior treatment of Plaintiff's application for benefits as one made by an individual producer (see Admin. R. Doc. 4-5).

This Court will accept Agriculture's findings of fact only if supported by substantial evidence on the record. 19 U.S.C. § 2395. The Administrative Record in this matter lacks substantial evidence that St. Patrick, Inc., rather than Plaintiff, applied for TAA benefits. Rather, the Administrative Record demonstrates that until January 12, 2005, Agriculture treated Plaintiff's application for TAA benefits as that of an individual producer. (See, e.g., Admin. R.

---

[1]The Court notes that Plaintiff's current address was provided on the envelope when the July 13, 2004, denial letter was returned to FSA. Nonetheless, the Administrative Record does not indicate that FSA made any effort to resend the initial denial letter to Plaintiff's correct address. Plaintiff only received the second denial letter from FSA after he inquired of the agency the status of his application for benefits. (Pl.'s Resp. at 1.)

Docs. 4, 5, 14, 19, 20-22.)  Accordingly, this Court rejects Agriculture's factual assertion that St.

Patrick, Inc. was the applicant for TAA benefits in this matter.

B.      Question of Law

        To the extent that this Court has determined that Plaintiff was–in fact–the applicant for

TAA benefits in the underlying claim, it, therefore, follows that Plaintiff is the proper party

plaintiff in this case, which appeals the denial of TAA benefits.  The Court recognizes that there

may be a further legal question about whether Plaintiff or St. Patrick Inc., was the party entitled

to apply for TAA benefits.  That  issue is properly addressed in the context of Plaintiff's motion

for judgment on the agency record.  This Court notes that

> a reviewing court, in dealing with a determination or judgment which an
> administrative agency alone is authorized to make, must judge the propriety of
> such action solely by the grounds invoked by the agency.  If those grounds are
> inadequate or improper, the court is powerless to affirm the administrative action
> by substituting what it considers to be a more adequate or proper basis.  To do so
> would propel the court into the domain which Congress has set aside exclusively
> for the administrative agency.

SEC v. Chenery Corp., 332 U.S. 194, 196 (1947).  It follows that "courts may not accept

appellate counsel's post hoc rationalizations for agency action."  Burlington Truck Lines, Inc. v.

United States, 371 U.S. 156, 168 (1962).  This "principle has long been applied to judicial review

of agency action."  Licausi v. Office of Pers. Mgmt., 350 F.3d 1359, 1363 (Fed. Cir. 2003).  This

Court has applied and will continue to apply this principle to this matter.

## CONCLUSION

For the reasons cited herein, this Court denies Defendant's Motion to Recaption Case.

Further, Defendant is ordered to file its response to Plaintiff's motion for judgment on the agency

record no later than August 25, 2006.


SO ORDERED.




                                                              /s/ Gregory W. Carman
                                                               Gregory W. Carman



Dated:  July 31, 2006
            New York, New York