Slip Op. 09 - 62

UNITED STATES COURT OF INTERNATIONAL TRADE

- - - - - - - - - - - - - - - - - - - - - x

LARRY J. HACKER and NANCY A. HACKER,    :

                          Plaintiffs,   :

                    v.                  :   Court No. 07-00008

UNITED STATES SECRETARY OF AGRICULTURE, :

                          Defendant.    :

- - - - - - - - - - - - - - - - - - - - - x


Memorandum

[Plaintiffs' motion for judgment on the
 agency record denied; action dismissed.]

                                   Decided:  June 19, 2009

     Miller & Chevalier Chartered (Daniel P. Wendt) for the
plaintiffs.

     Tony West, Assistant Attorney General; Jeanne E. Davidson,
Director, Franklin F. White, Jr., Assistant Director, Commercial
Litigation Branch, Civil Division, U.S. Department of Justice
(Brian T. Edmunds); and Office of General Counsel, U.S.
Department of Agriculture (Jeffrey Kahn), of counsel, for the
defendant.


          AQUILINO, Senior Judge:    Upon commencement of this

action pursuant to 19 U.S.C. §2395 and 28 U.S.C. §1581(d) to

contest the denial of a cash benefit under the Trade Adjustment

Assistance for Farmers program by the Foreign Agricultural

Service ("FAS"), U.S. Department of Agriculture, the defendant

interposed a motion to remand to FAS so that

> it may issue a new and more detailed decision
> explaining the reasons for its denial of plaintiffs'
> request for certification for trade adjustment
> assistance ("TAA").

I

That motion was granted, and the order of remand has

brought forth a reconsidered decision by FAS that, nevertheless,

on

> the basis of the net farm income reported on the 2003
> and 2004 Schedule F's that Mr. Hacker submitted, there
> was not a decline in his net farm income from 2003 to
> 2004, and therefore Mr. Hacker does not meet the
> requirements of 19 U.S.C. § 2401e(a)(1)(C) and 7
> C.F.R. § 1580.301(e)(4) and is not eligible for a cash
> payment under TAA.[1]

---

[1] The "Schedule F's" referred to were part of plaintiffs' submissions to the Internal Revenue Service on Forms 1040 for those calendar years.  See Administrative Record ("AR"), pp. 5, 6.

Footnote 1 to this decision states that, according to the agency record,

> Larry J. Hacker was the sole applicant for TAA
> benefits.  Although Nancy A. Hacker also signed the
> application, her name is not listed as an applicant,
> and all determinations were made solely with respect
> to Larry J. Hacker.  . . .  However, this does not
> affect the determination in this case.

AR citations omitted.  Plaintiffs' counsel concur.  See Hackers' Rule 56.1 Brief, p. 1 n. 1.

Whereupon, with the able assistance of counsel *pro bono publico*, the plaintiffs filed an amended complaint, which has been duly answered by the defendant, and then a motion for judgment on the agency record pursuant to USCIT Rule 56.1.

That motion indicates that plaintiffs are American farmers who have grown and harvested *Concord* and *Niagara* grapes in the state of Michigan.  It proceeds to describe *in haec verba* their circumstances in this matter as follows:

> A drought in 2001 ruined much of the Hackers' grape crop, but the Secretary was there to help, providing a disaster relief payment of $80,000.  The Hackers received the payment in early 2004.  By that time, however, the Hackers were struggling to cope with an influx of low-priced imports from Argentina. Soon, the Secretary recognized that grape prices had significantly fallen due to the low-priced imports and made TAA payments available to eligible farmers.  To be eligible, a farmer must show that his or her net farm income has decreased at the same time as low-priced imports penetrated the market.  For the Hackers, this meant that they were required to show that their 2004 net farm income was lower than their 2003 net farm income.

> But the Hackers' net farm income - as reported in their tax filings - did <u>not</u> decline from 2003 to 2004 because the Hackers' 2004 net farm income included the $80,000 disaster relief payment.  However, the Hackers' <u>true</u> net farm income - *i.e.*, the net farm income excluding the disaster relief payment - <u>did</u> decline from 2003 [to] 2004.  Indeed, although they farmed approximately the same acreage in 2003 and

2004, the Hackers produced fewer grapes in 2004 in a
market with declining prices.

The Secretary relied solely on the Hackers' net
farm income as reported in their tax returns and
denied the Hackers' request for TAA payments.  . . .

Hackers' Rule 56.1 Brief, pp. 1-2 (emphasis in original).

The motion takes the position that defendant's denial

of assistance was not based on substantial evidence because the

Secretary relied solely on the Hackers' net farm income as

reported in their tax returns.

Also, the Secretary's determination was not
otherwise in accordance with law because the . . .
regulation defining net farm income, as applied to Mr.
Hacker's application, unjustifiably and arbitrarily
distinguishes between farmers based on the irrelevant
facts of (1) if and when a farmer receives a disaster
relief payment unrelated to the relevant period; and
(2) whether the farmer reports net farm income for tax
purposes on an accrual or cash basis.

Id. at 2.  It argues that the defendant could have and should

have provided the plaintiffs with relief, first by excluding the

disaster payment "*per se*" from its determination of their net

farm income or, second, by accepting plaintiffs' "invitation" to

calculate that income on an accrual, rather than a cash, basis.

See id. at 2-3.

A

Congress has enacted qualifying requirements for relief of the kind prayed for herein, including that a

> producer's net farm income (as determined by the Secretary) for the most recent year [be] less than the producer's net farm income for the latest year in which no adjustment assistance was received by the producer under this part.

19 U.S.C. §2401e(a)(1)(C). In furtherance of this statutory condition, the Secretary of Agriculture has determined to define "net farm income" to mean

> net farm profit or loss, excluding payments under this part, reported to the Internal Revenue Service for the tax year that most closely corresponds with the marketing year under consideration.[2]

And the courts have determined that this is a "reasonable definition of the statutory term, to which [they] are obligated to defer." Steen v. United States, 468 F.3d 1357, 1360 (Fed.Cir. 2006), aff'g, 29 CIT 1241, 395 F.Supp.2d 1345 (2005).

In this matter, the defendant has proceeded in accordance with this law, thereby leaving the plaintiffs to

---

[2] 7 C.F.R. §1580.102. The court notes that plaintiffs' $80,000 disaster relief payment was not the kind of "payment[]" under this part" contemplated by this regulation.

attempt to find relief in certain cases decided subsequent to Steen, including Robert L. Anderson v. U.S. Sec'y of Agriculture, 30 CIT 1993, 469 F.Supp.2d 1300 (2006); Dus & Derrick, Inc. v. U.S. Sec'y of Agriculture, 31 CIT ___, 469 F.Supp.2d 1326 (2007); Mark T. Anderson v. U.S. Sec'y of Agriculture, 31 CIT ___, Slip Op. 07-77 (May 16, 2007).

In the case of Robert L. Anderson, the court remanded his claim because it found the agency failed to consider the reasonableness of its regulation as applied to Mr. Anderson in its determination. See 30 CIT 1742, 1753, 462 F.Supp.2d 1333, 1342 (2006). Citing Steen, which was decided by the court of appeals one month after that order, the agency declined to carry out its mandate. Whereupon the CIT ordered the Secretary, yet again, to comply on the grounds of improper procedure and that "a plain reading of Steen would have demonstrated its inapplicability"[3] because that matter lacked any contention that the tax returns distorted the net amount of income derived from all fishing sources in the two relevant years. There was such an assertion in Robert L. Anderson. See 31 CIT ___, ___, 493 F.Supp.2d 1288, 1291 (2007).

---

[3] 30 CIT at 1994, 469 F.Supp.2d at 1301.

Such a reading does not lead to the same conclusion in this action.  Indeed, what seemingly has come to discomfort the plaintiffs is the timing of their application at the end of one tax year for the disaster relief payment, which was then received soon after the start of the ensuing such year.

> It is well-established that the cash method usually leads to distorted income statements for any one taxable year. *See*, *e.g.*, *Frysinger v. Comm'r,* 645 F.2d 523, 527 (5th Cir. 1981).  However, the "sacrifice in accounting accuracy under the cash method represents an historical concession by the Secretary and the Commissioner to provide a unitary and expedient bookkeeping system for farmers and ranchers in need of a simplified accounting procedure." *United States v. Catto*, 384 U.S. 102, 116 (1966); *see also Frysinger*, 645 F.2d at 527 (finding the Commissioner has specifically granted farmers the special privilege of using the cash method despite the high probability for substantial distortions of income in any one taxable year).  For income reporting purposes, the distortions are not considered material because "over a period of years the distortions will tend to cancel out each other." *Van Raden v. Comm'r*, 71 T.C. 1083, 1104 (1979); *see also Spitalny v. United States*, 430 F.2d 195, 197 (9th Cir. 1970).

Robert L. Anderson v. U.S. Sec'y of Agriculture, 30 CIT at 1750, 462 F.Supp.2d at 1340.  Presumably the delayed receipt of the disaster relief payment was the result of appropriate business planning, yet having the effect countenanced by the foregoing cited cases.

Moreover, the evidence of those farm-relief funds on the agency record differentiates this action from all the others cited by the plaintiffs herein.  Compare, e.g., Dus & Derrick, Inc. v. U.S. Sec'y of Agriculture, supra, with id., 32 CIT ___ , Slip Op. 08-19 (Feb. 6, 2008), and Mark T. Anderson v. U.S. Sec'y of Agriculture, 30 CIT 1104, 441 F.Supp.2d 1379 (2006), with id., supra.  In sum, this court is unable to conclude that defendant's determination after remand is not in accordance with law and not supported by substantial evidence on the record.

B

With regard to appropriate relief, the plaintiffs take the position that the Secretary of Agriculture's definition of "net farm income", supra, is not in accordance with law.  To contend that the disaster relief payment received be excluded from farm income for TAA-calculation purposes does not coincide with plaintiffs' own understanding of the payment, which they included as net farm income on that line of their Schedule F income-tax filing.  Nor does it concur with the Secretary's recognized use under its Generally Accepted Accounting Principles all-inclusive concept of net income that includes even extraordinary items.  See, e.g., Selivanoff v. U.S. Sec'y

of Agriculture, 30 CIT 1051 (2006); Dorsey v. U.S. Sec'y of Agriculture, 32 CIT ___, Slip Op. 08-76 (July 11, 2008).

II

In view of the foregoing, plaintiffs' Rule 56.1 motion for judgment on the agency record must be denied. Judgment dismissing this action will enter accordingly.

Decided:  New York, New York
          June 19, 2009


                              /s/ Thomas J. Aquilino, Jr.
                                   Senior Judge