**MELODY MUSIC, INC., Appellant,**

**v.**

**FEDERAL COMMUNICATIONS COM-MISSION, Appellee.**

**No. 18857.**

United States Court of Appeals
District of Columbia Circuit.

Argued Jan. 14, 1965.

Decided April 8, 1965.

Mr. Marcus Cohn, Washington, D. C., with whom Messrs. Paul Dobin and Stan-

---

ley S. Neustadt, Washington, D. C., were on the brief, for appellant.

Mr. John Conlin, Counsel, Federal Communications Commission, with whom Messrs. Henry Geller, Gen. Counsel, and Daniel R. Ohlbaum, Deputy Gen. Counsel, Federal Communications Commission, were on the brief, for appellee.

Mr. Howard Jay Braun, Counsel, Federal Communications Commission, also entered an appearance for appellee.

Before BAZELON, Chief Judge, and FAHY and WRIGHT, Circuit Judges.

BAZELON, Chief Judge:

The Federal Communications Commission refused to renew appellant's license to operate WGMA, a standard radio broadcast station in Hollywood, Florida. Appellant's only shareholders, Daniel Enright and Jack Barry, produced television quiz shows prior to 1960 in which some contestants were secretly given assistance in answering questions. The hearing examiner stated that Enright and Barry

"have engaged in activities relating to television quiz programs which are censurable and [which] * * * reflect adversely upon their character qualifications to be a licensee of a radio station. However * * * such activities do not constitute an absolute disqualification. * * *."

The examiner found, as mitigating factors, that WGMA had provided "outstanding service," and that Enright and Barry had violated no law or express Commission policy when they conducted the deceptive programs, though Congress has since amended the Communications Act to forbid such practices.[1] The examiner further stated:

"[S]imple justice requires that Barry and Enright's conduct be considered in the light of the then-existing circumstances. Certainly the networks which broadcast these then highly rated programs had both network and licensee responsibility,

since the programs in question were broadcast over their own stations, as well as over those of their affiliates.

"From the evidence, it appears that, at least, the higher echelons of the networks were not aware of the use of such controls. It is, however, equally evident that there had been public exposés which would appear likely to alert persons with a desire to know the facts * * * and to cause real investigations to be made * * *. [A]s was pointed out to the vice president and general attorney of NBC by at least two members of the congressional committee [which investigated these practices in 1960], it was singular indeed that no suspicion had been aroused * * *."

On the basis of these findings, the examiner recommended license renewal. On April 15, 1964, the Commission reversed the examiner, because Enright and Barry "lack the requisite character qualification to be licensees" on the ground that their "prolonged deception practiced upon the television viewing public * * * is so patently and flagrantly contrary to the public interest as to warrant, without more, the denial of an application for renewal * * *." The Commission also found that Enright and Barry had attempted "to discourage and to frustrate" initial investigations by a New York City grand jury and by network officials.

Appellant petitioned the Commission to reconsider its decision and to consolidate oral argument with pending applications for renewal of operating licenses by the National Broadcasting Company, the network which carried, and for a time owned, the quiz shows produced by Enright and Barry. Alternatively appellant asked the Commission to vacate its decision and withhold further decisions until it had decided the NBC case.

It appears that before the Commission's initial decision in the present case, the hearing examiner in the NBC case

1. Section 509, Federal Communications Act, 47 U.S.C. § 509 (Supp. V, 1964).

rendered his opinion, stating in pertinent part:

"NBC contends that it was duped, and that it acted promptly to protect the public interest as soon as it determined what was going on. * * * The manner in which NBC reacted when the revelations inescapably broke upon it shows how clearly it was recognized inside the company that the trickery of its quiz shows was on the wrong side of the line separating downright dishonesty from the permissible make-believe of show business. The record urges the judgment that so long as there was no danger of disclosure to threaten audience acceptance of the shows, NBC turned its back on the evidence that the quiz programs might be counterfeit, and acted finally only when it was compelled by the growing tide of public dissatisfaction and by the threat posed in the aroused interest of various public agencies. Clearly, any disposition to frame conduct not according to ordinary morality and public requirements but in response to business necessities, and which shuns misconduct only because of the risks in discovery, is a substantial discredit." [2]

The examiner concluded, however, that this discredit was counterbalanced by "the record of the network" in broadcasting, and that its role in the deceptive quiz shows thus did not disqualify it from holding broadcast licenses. On July 24, 1964, while the NBC proceedings were still pending, the Commission denied appellant's request for reconsideration in conjunction with the NBC applications on the ground that "no useful purpose would be served." One week later, on July 30, 1964, the Commission granted several license renewals to NBC without any mention of the network's role in the deceptive quiz shows.[3]

We think the Commission's refusal at least to explain its different treatment of appellant and NBC was error. Both were connected with the deceptive practices and their renewal applications were considered by the Commission at virtually the same time. Yet one was held disqualified and the other was not.[4] Moreover, while in other cases the Commission found that criminal violations of antitrust laws were not sufficient character disqualifications to bar license renewals,[5] in the present case it found noncriminal conduct sufficient. The Commission stated, "Obviously, misconduct of the nature here involved in the broadcast field is necessarily in a somewhat different category [from criminal antitrust violations] and, on the facts of this case, of a most serious consequence." Without intimating any opinion as to whether any of the misconduct discussed here is "in a somewhat different category" from appellant's, we think the differences are not so "obvious" as to remove the need for

2. *In re Applications of Nat'l Broadcasting Co.*, Docket Nos. 13085, 14091–92, 14054–56, initial decision of Hearing Examiner, released Nov. 20, 1963.

3. Following oral argument before this court, counsel for the Commission submitted a memorandum stating that "no formal findings as to the network's lack of knowledge or participation in the shows had been publicly made" by the Commission.

4. Any inconsistency here may not be explained as a change in policy or correction of a previously erroneous ruling since the cases were decided contemporaneously. Compare Federal Communications Comm'n v. WOKO, 329 U.S. 223, 67 S.Ct. 213, 91 L.Ed. 204 (1946); Leedom v. International Brotherhood of Elec. Wkrs., 107 U.S.App.D.C. 357, 278 F.2d 237 (1960); Shawmut Ass'n v. Securities & Exchange Comm'n, 146 F.2d 791 (1st Cir. 1945); Feinstein & Co. v. United States, 317 F.2d 509 (2d Cir. 1963); Lanolin Plus Cosmetics v. Marzall, 90 U.S.App.D.C. 349, 196 F.2d 591 (1952).

5. General Electric Company, 2 Pike & Fischer R.R.2d 1038 (1964); Westinghouse Broadcasting Co., 22 Pike & Fischer R.R. 1023 (1962).

explanation. And whether there are differences may be a question of decisional importance.[6]

█ Moreover, "the Commission has not explained its decision 'with the simplicity and clearness through which a halting impression ripens into reasonable certitude. In the end we are left to spell out, to argue, to choose between conflicting inferences. * * * We must know what a decision means before the duty becomes ours to say whether it is right or wrong.'" Secretary of Agriculture v. United States, 347 U.S. 645, 654, 74 S.Ct. 826, 832, 98 L.Ed. 1015 (1954). We therefore remand this case for further proceedings.[7] The Commission should reconsider appellant's application in accordance with the purposes of this remand. Whatever action the Commission takes on remand, it must explain its reasons and do more than enumerate factual differences, if any, between appellant and the other cases; it must explain the relevance of those differences to the purposes of the Federal Communications Act.

So ordered.

FAHY, Circuit Judge:

I concur in remanding for explanation of the difference of treatment of appellant and NBC, and reconsideration, with respect to the participation of each in the television quiz shows. The violation of antitrust laws by certain licensees not involved in this case and appellant's conduct are, however, so unrelated that I would require no further explanation from the Commission in this matter.

---

6. Compare Yick Wo v. Hopkins, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886); Hornsby v. Allen, 326 F.2d 605, 330 F. 2d 55 (5th Cir. 1964); Mary Carter Paint Co. v. Federal Trade Comm'n, 333 F.2d 654 (5th Cir. 1964).

7. See Sunbeam Television Corp. v. Federal Communications Comm'n, 100 U.S. App.D.C. 82, 243 F.2d 26 (1957), where

the case was remanded to the Commission because of its apparent failure to apply consistent standards in a comparative hearing for a broadcast license. See also Secretary of Agriculture v. United States, *supra;* Carter Mountain Transmission Corp. v. Federal Communications Comm'n, 116 U.S.App.D.C. 93, 321 F.2d 359 (1963).