CAPITAL CITIES COMMUNICATIONS, INC., et al., Appellants,

v.

FEDERAL COMMUNICATIONS COMMISSION, Appellee.*

Nos. 75–1503 and 75–1504.

United States Court of Appeals, District of Columbia Circuit.

Argued May 25, 1976.

Decided Dec. 16, 1976.

Joel Rosenbloom, Washington, D. C., with whom Stephen A. Weiswasser and A. Stephen Hut, Jr., Washington, D. C., were on the brief for appellants-petitioners in Nos. 75–1503, 75–1504, 75–2274 and 75–2275. Richard D. Paisner, Washington, D. C., also entered an appearance for appellants-petitioners in Nos. 75–1503 and 75–1504. Marianne K. Smythe, Washington, D. C., also entered an appearance for petitioner in No. 75–2274.

C. Grey Pash, Jr., Counsel, F. C. C., Washington, D. C., with whom Ashton R. Hardy, Gen. Counsel, Daniel M. Armstrong, Associate General Counsel, Diana L. Evans, Counsel, F. C. C., Robert B. Nicholson and Laurence K. Gustafson, Attys., Dept. of Justice, Washington, D. C., were on the

---

* General Broadcasting Co., 75–1541; KCST–TV, Inc., 75–1545; Radio Statesboro, Inc. (two cases), 75–1548, 1549; Trinity Broadcasting Network, Inc. (two cases), 75–1552, 1553; and LIN Broadcasting Corp. v. Federal Communications Commission (two cases), 75–2274, 2275.

brief for appellee-respondent. Barry Grossman, Atty., Dept. of Justice, Washington, D. C., entered an appearance for respondent United States of America in No. 75–2274.

Warren C. Zwicy, Washington, D. C., was on the brief for appellant in No. 75–1545.

John M. Duty and James A. Gammon, Washington, D. C., were on the brief for appellant-petitioner in Nos. 75–1541, 75–1548 and 75–1549.

Joel Rosenbloom, Stephen A. Weiswasser and A. Stephen Hut, Jr., Washington, D. C., filed a brief on behalf of Lin Broadcasting Corp. as amicus curiae in Nos. 75–1503, 75–1504, 75–1541, 75–1545, 75–1548, 75–1549, 75–1552 and 75–1553 urging reversal.

Steven R. Rivkin, Washington, D. C., filed a brief on behalf of Hanson Communications, Inc., as amicus curiae in Nos. 75–2274 and 75–2275 urging reversal.

Before TAMM and MacKINNON, Circuit Judges, and KAUFMAN,[*] United States District Judge for the District of Maryland.

Opinion for the court filed by MacKINNON, Circuit Judge.

Concurring opinion filed by TAMM, Circuit Judge.

MacKINNON, Circuit Judge:

Petitioners-appellants [1] (hereinafter, "petitioners") seek review of the fees charged by the Federal Communications Commission (FCC) under the authority of 31 U.S.C. § 483a (1970) [2] in the Commission's 1970 fee

---

[*] Sitting by designation pursuant to 28 U.S.C. § 292(d).

1. Uncertain as to whether review by this court was authorized by 47 U.S.C. § 402(a) and 28 U.S.C. § 2342 (1970) (petitions for review), or by 47 U.S.C. § 402(b) (1970) (appeals), four of the parties here initiated review proceedings under each provision. The parties in Nos. 75–1541 and 75–1545 only appealed under the latter statute, however, and it appears that the appellant in No. 75–1552 may have failed to file its appeal within the 30 day period specified by 47 U.S.C. § 402(c) (1970). Therefore we must decide which statute gives us jurisdiction over these cases.

Initially we observe that those statutes provide that this particular court (unlike other circuits) can entertain actions under either section. Although arguably the orders under review here (which denied waiver or stay of fees assessed under the 1970 schedule, or which refused payment at a rate other than that prescribed by the 1970 schedule) could be considered "ancillary" to the grant of authority to transfer or assign rights under 47 U.S.C. § 402(b)(3), *Tomah-Mauston Broadcasting Co. v. FCC*, 113 U.S.App.D.C. 204, 205, 306 F.2d 811, 812 (1962), we believe they have an entirely separate purpose. *See National Assn. of Broadcasters v. FCC*, 180 U.S.App.D.C. — at —— n. 1, 554 F.2d 1118 at 1121 n. 1 (1976). Moreover, appellants make no allegation that their applications for authority to transfer or assign rights were denied. We thus hold that we have jurisdiction to hear these cases under 47 U.S.C. § 402(a), and not under section 402(b), and we conclude that appellants in two cases (Nos. 75–1541 and 75–1545) have sought review under the wrong jurisdictional provision. We will, however, treat the appeals in these two cases as if they were petitions filed

under 47 U.S.C. § 402(a) and 28 U.S.C. § 2342 (1970), since to do so will prejudice no other party.

In a letter filed with this court on June 30, 1976, counsel for two parties (Wichita Falls Telecasters, Nos. 75–1405, 75–1406, and WHTN–TV, Inc., No. 75–1520) to cases which have been consolidated by order of this court in a companion case, *National Assn. of Broadcasters*, 180 U.S.App.D.C. ——, 554 F.2d 1118 (1976), protest that the factual settings of their suits are more analogous to the facts of this case. They therefore request that their cases be considered in conjunction with the instant case. However, because of the disposition we make of all these companion cases we find that to be unnecessary. Petitioners-appellant in Nos. 75–1405, 75–1406, and 75–1520 may make their individual arguments to the Commission on remand.

2. 31 U.S.C. § 483a provides:

It is the sense of the Congress that any work, service, publication, report, document, benefit, privilege, authority, use, franchise, license, permit, certificate, registration, or similar thing of value or utility performed, furnished, provided, granted, prepared, or issued by any Federal agency (including wholly owned Government corporations as defined in the Government Corporation Control Act of 1945) to or for any person (including groups, associations, organizations, partnerships, corporations, or businesses), except those engaged in the transaction of official business of the Government, shall be self-sustaining to the full extent possible, and the head of each Federal agency is authorized by regulation (which, in the case of agencies in the executive branch, shall be as uniform as

schedule for the grant of applications for the assignment of broadcast licenses or transfer of control or ownership of broadcast licensees.[3] All the fees in question here were assessed (*i. e.,* the grant of authority was made) in that interim period between March 4, 1974, when the Supreme Court decided *National Cable Television Association v. United States (NCTA),* 415 U.S. 336, 94 S.Ct. 1146, 39 L.Ed.2d 370 (1974), and March 1, 1975, when the 1975 fee schedule became effective. At the time they paid the fees in question petitioners requested either a waiver, stay, or refund of such grant fees paid under the 1970 fee schedule, or that they be allowed to pay at a rate other than that specified by that schedule. The resulting orders[4] denying those requests are the subject of this consolidated action.

■ The petitioners raise two distinct issues. First, they challenge the 1970 fee schedule and the Commission's right to assess assignment or transfer grant fees under it. This issue is fully controlled by our decision in a companion case, *National Association of Broadcasters v. FCC,*[5] also decided this date. As explained in that case, the principles laid down by the Supreme Court in *NCTA* require invalidation of the entire 1970 fee schedule, because the Commission announced in adopting it that the *entire* fee schedule was based in part on factors other than "value to the recipient,"[6] which the Supreme Court held was the *only* permissible measure. Although the Government argues here that "there really is no question of including public policy factors in the grant fee," Govt. Brief at 26, the Commission's statements upon proposing and adopting the 1970 fee schedule indicated otherwise. *National Assn. of Broadcasters, supra,* 180 U.S.App.D.C. at ——, 554 F.2d at 1128. Since the Commission did not explicitly exclude that element when it fixed the 1970 assignment and transfer grant fee, we see no reason to exempt this particular fee from our general order to the FCC to recalculate and refund all fees to the extent that they were improperly charged under the 1970 fee schedule. *See id.,* ———————, 554 F.2d at 1132–1133.

■ In doing so, however, we take this opportunity to make several specific observations about the 1970 assignment or transfer grant fee. First, the record leaves us unclear as to the services that the Agency relies upon to justify the imposition of this

practicable and subject to such policies as the President may prescribe) to prescribe thereof such fee, charge, or price, if any, as he shall determine, in case none exists, or redetermine, in case of an existing one, to be fair and equitable taking into consideration direct and indirect cost to the Government, value to the recipient, public policy or interest served, and other pertinent facts, and any amount so determined or redetermined shall be collected and paid into the Treasury as miscellaneous receipts: *Provided,* That nothing contained in this section shall repeal or modify existing statutes prohibiting the collection, fixing the amount, or directing the disposition of any fee, charge or price: *Provided further,* That nothing contained in this section shall repeal or modify existing statutes prescribing bases for calculation of any fee, charge or price, but this proviso shall not restrict the redetermination or recalculation in accordance wit.. the prescribed bases of the amount of any such fee, charge or price.

3. The grant fee contained in the 1970 fee schedule was two percent of the consideration specified in the contract of assignment or transfer. 21 F.C.C.2d 502, 505 (1970). Because of difficulties experienced in ascertaining the amount of consideration underlying complicated transactions, the 1975 fee schedule switches to average gross revenues of the station as a measure of the fee. 48 F.C.C.2d 402, 411–12 (1974).

4. The letter rulings, dated April 30, 1975, appear at 53 F.C.C.2d 181 [J.App. 31]; 53 F.C.C.2d 183 [J.App. 33]; 56 F.C.C.2d 590 [J.App. 26]; FCC No. 75–497 [J.App. 37]; 53 F.C.C.2d 347 [J.App. 29]; 53 F.C.C.2d 408 [J.App. 35]. Consolidated cases Nos. 75–2274 and 75–2275 involve a letter ruling of December 18, 1975, FCC No. 75–1201 [J.App. 50].

5. 180 U.S.App.D.C. ——, 554 F.2d 1118 (1976).

6. 21 F.C.C.2d 502, 504 (1970); 23 F.C.C.2d 880, 882, 883 (1970). *See also National Assn. of Broadcasters v. FCC,* 180 U.S.App.D.C. —— at ——, 554 F.2d 1118 at 1128 (1976).

fee.[7] The Government appears to believe that the justification for charging this fee is that "without suffering even the inconvenience of facing competing applicants, the assignee or transferee assumes control of an ongoing broadcast station and succeeds to the 'preferred position' described by the Supreme Court in [*Red Lion Broadcasting Co. v. FCC*, 395 U.S. 367, 400, 89 S.Ct. 1794, 23 L.Ed.2d 371 (1969)]." Govt. Brief at 22. It is not obvious to us how such services differ in nature from those involved in the annual grant to an established station of authority to operate, for which the Commission also assessed a fee every year against all stations (and thus presumably against the transferred or assigned stations during the year of the transfer or assignment). In addition, the lack of "inconvenience of . . . competing applicants" referred to in the quoted statement, *supra*, does not seem to be in any way related to the costs of the services furnished by the Commission. If anything, the absence of competing applicants would keep Commission costs at a minimum and tend to reduce the fee.

■ Second, we find the Commission's use of the consideration for the transfer (or the *gross revenues* of the station) as a measure of the fee to be not in accord with our decision, expressed in a companion case, that the proper standard is not value *derived* by the recipient but rather value *conferred* on the recipient.[8] In our view, this standard requires the fee assessed to bear a *reasonable* relationship to the cost of the services rendered to identifiable recipients. This standard is not met where the persons who receive essentially the same physical services from the agency are charged a grossly variable fee solely for the reason that some are larger or have more income than others. If the cost to the agency of the services rendered in approving the transfer of a station for a consideration of

$1 million are approximately the *same* as the costs in approving the transfer of a station for $2 million, the fee charged for performing the service cannot be doubled in the latter instance. The same rule would apply if the fee were based on average gross revenues. *See* note 3 *supra*. Such a fee structure would not comply with section 483a because it would not take into consideration the cost to the Government and would on this record not appear to bear any reasonable relation to the cost of the value conferred by the agency.

However, the statutory requirement that fees should be "fair and equitable" does leave some room for considerations of administrative convenience, and may authorize a higher fee to the extent that it can be shown that approval of transfers or assignments of applicants with larger operations (financially speaking) entail more work for the agency. *See National Cable Television Assn. v. FCC*, 180 U.S.App.D.C. —— at —— ———, 554 F.2d 1094 at 1108–1109 (1976). As we point out in that case, however, it is highly unlikely that Commission costs would rise in a straight line corresponding to higher incomes of the applicants. On remand, the Commission should accordingly alter the measure of the fees in question here and recalculate and collect a new fee for the services at issue, under the proper standard, setting out its explanation for the basis and measure of the new fee clearly and in detail in its order.

The other issue raised by petitioners is one of timing. The 1975 fee schedule was *adopted* on January 15, 1975, but was not made *effective* until March 1, 1975. 50 F.C.C.2d 906, 924 (1975). Under this arrangement, several of petitioners were granted authority to transfer or assign after the 1975 fee schedule (which assessed substantially lower fees) was adopted but nevertheless had to pay the higher 1970

---

7. *Cf. National Cable Television Assn. v. FCC*, 180 U.S.App.D.C. ——, ——, ——-——, 554 F.2d 1094, 1100, 1104–1105 (1976).

8. *National Cable Television Assn. v. FCC*, 180 U.S.App.D.C. —— at ——-——, 554 F.2d 1094 at 1107–1108 (1976). For a discussion of the

issues raised by Judge Tamm's concurring opinion as to the "value to the recipient" standard *see* n. 28 of our opinion filed today in *National Assn. of Broadcasters v. FCC*, 180 U.S.App.D.C. ——, 554 F.2d 1118 (1976).

rate because the effective date of the new fee schedule had been delayed beyond the date of the grant. They contend that the Commission's action in not making the schedule effective immediately created an arbitrary disparity between themselves and other broadcasters who, though their applications for authority to transfer or assign were pending before the Commission at the same time, were not granted that authority until after March 1, 1975.

■ Initially, we note that this issue may be mooted by the illegality of the 1970 fee, the recalculation of which we today order. We therefore will remand this issue for reconsideration by the Commission after they have made the necessary adjustments in the 1970 fee schedule. In doing so, we observe that, while the FCC technically has the authority under section 4(d) of the Administrative Procedure Act, 5 U.S.C. § 553(d) (1970), to delay the effective date of a newly adopted rule, this delay is not mandatory where "good cause" exists. 5 U.S.C. § 553(d)(3) (1970). In light of the Commission's past practice in this regard[9] and the possibility that similarly situated applicants may have been treated discriminatorily by the agency's action in delaying the effective date,[10] "good cause" for making the new fee schedule immediately effective may well exist in this situation.

This is not to say, of course, that the mere fact that an applicant who received his grant of authority on February 28, 1975, paid a higher fee for the same service than one who received it on March 1, 1975, is enough to require a partial refund to the former applicant. Such line-drawing problems are always with us. Any classification which requires drawing a line is necessarily arbitrary to some extent. When any line is drawn, and such lines must be drawn somewhere, it cannot be said that those close to the line on both sides are given perfectly equal protection. On the other hand if at the time the new rule was adopted there was a substantial pool of similarly-situated applicants awaiting grants of authority, and it was apparent that not all pending applications could be processed under the old rule, then the Commission may well have been required to take *some* action to ensure reasonably equal treatment for those applicants. *Garrett v. FCC*, 168 U.S. App.D.C. 266, 270, 513 F.2d 1056, 1060 (1975); *cf. Melody Music, Inc. v. FCC*, 120 U.S.App.D.C. 241, 345 F.2d 730 (1965).

The case is therefore remanded to the FCC for recalculation and refund of fees paid under the 1970 fee schedule, and for a reconsideration of the problem of unequal treatment of petitioners and others similarly situated (if this latter issue does not become moot).

*Judgment accordingly.*

TAMM, Circuit Judge, concurring:

I concur in the court's opinion with one limited reservation. As set forth in my concurrence in *National Association of Broadcasters v. FCC*, Nos. 75–1087 *et al.*, 180 U.S.App.D.C. ——, 554 F.2d 1118 (1976), also decided today, I am concerned that the majority unnecessarily narrows the meaning of "value to the recipient" in the Independent Offices Appropriations Act, 31 U.S.C. § 483(a) (Supp. 1975).

---

**9.** The effective date of the 1970 fee schedule was August 1, 1970. 23 F.C.C.2d 880, 886 (1970). However, if the application was made to the Commission before July 1, 1970 (the date the 1970 fee schedule was adopted), the new fee schedule was not applied even though the actual grant of authority was made on or after August 1, 1970. *Id.* Although we recognize that this is exactly the opposite of the present situation (since there the application of the new schedule was delayed while here it is urged that it be advanced), the 1970 action nonetheless demonstrates a sensitivity on the part of the FCC to unequal treatment, *see* 28 F.C.C.2d 139, 141 (1971), that is absent here.

**10.** It is alleged by petitioner LIN Broadcasting that applications filed *before* those of petitioners Radio Statesboro and General Broadcasting Co. were granted *after* those of petitioners, and thus were assessed under the 1975 fee schedule while petitioners were assessed under the 1970 fee schedule. *See* Brief of LIN Broadcasting at 8 n. 4. We recognize, however, that there may well be good reasons for this which do not appear in the record.