SLIP OP. 06-161
UNITED STATES COURT OF INTERNATIONAL TRADE

```
-------------------------------x
ROBERT L. ANDERSON,            :
                               :
            Plaintiff,         :
                               :   Before: Pogue, Judge
            v.                 :   Court No. 05-00329
                               :
                               :
UNITED STATES SEC'Y            :
OF AGRICULTURE,                :
                               :
            Defendant.         :
-------------------------------x
```

[Remanded for reconsideration of refusal to consider Plaintiff's claim that his net income declined on an accrual basis.]

Dated: November 1, 2006.

Robert L. Anderson, Plaintiff pro se.

Peter D. Keisler, Assistant Attorney General; David M. Cohen, Director, Patricia M. McCarthy, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (David S. Silverbrand), for Defendant United States Secretary of Agriculture.

**OPINION**

**Pogue, Judge**: Plaintiff Robert L. Anderson challenges the decision of the Foreign Agricultural Service of the United States Department of Agriculture (hereinafter "Agriculture" or the "USDA") denying his application for benefits under the trade adjustment for farmers

program[1] ("TAA program").    Plaintiff claims that Agriculture's decision improperly failed to recognize the actual accrual basis decline in his net farm income for 2002. The court finds that the USDA entirely failed to consider an important aspect of the problem presented, see Motor Vehicle Mfs. Ass'n of U.S. v. State Farm Mut. Auto Ins. Co., 463 U.S. 29, 43 (1983), and remands the determination.

### JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction under 19 U.S.C. § 2395.[2] The court must uphold the factual determinations of the USDA if they are supported by substantial evidence.  19 U.S.C. § 2395(b). On legal issues, the court considers whether the Secretary's determination is "in accordance with law." Former Employees of Gateway Country Stores LLC v. Chao, 30 CIT __,__, Slip Op. 06-32, at 9(March 3, 2006), Former Employees of Elec. Data Sys. Corp. v. United States Sec'y of Labor, 28 CIT __, __, 350 F.Supp.2d 1282, 1286 (2004), Former Employees of Rohm & Haas Co. v. Chao, 27 CIT __,__, 246 F.Supp.2d 1339, 1346 (2003).

---

[1] See, Trade Adjustment Assistance Reform Act of 2002, Pub. L. 107-210, Title 1, Subtitle C § 141, 116 Stat. 953(2002), 19 U.S.C. §§ 2401 et seq.

[2] All references to 19 U.S.C. §§ 2395, 2401 et seq. are to Supplement III of the 2000 edition of the United States Code (2003).  Otherwise references to the United States Code are to the 2000 edition.

**BACKGROUND**

**A.**

Under the TAA program, producers who have been certified as eligible for benefits, see 19 U.S.C. § 2401a, must then individually meet several conditions in order to receive such benefits, 19 U.S.C. § 2401e. In particular, a producer qualifies for assistance only if "the producer's net farm income (as determined by the Secretary [of Agriculture]") for the most recent year is less than the producer's net farm income for the latest year in which no adjustment assistance was received by the producer under this chapter [19 U.S.C. §§ 2401 et seq.]" 19 U.S.C. § 2401e(a)(1)(C)(emphasis added).[3] Pursuant to this Statutory Authority, and invoking the Internal Revenue Service ("IRS") code, the Secretary defined "net farm income" as "net farm profit or loss, excluding payments under this part, reported to the Internal Revenue Service for the tax year that most closely corresponds with the marketing year under consideration." 7 C.F.R. § 1580.102[4]

_____

[3]Though not relevant here, the agricultural commodity producer's adjusted gross income must also not exceed certain levels specified in section 1308-3a of Title 7, 19 U.S.C. § 2401e(a)(2)(A)(i).

[4]All references to the Code of Federal Regulations are to the 2004 edition, except where otherwise indicated.

(emphasis added)(also defining "net fishing income" the same way.).

**B.**

In October of 2003, the Foreign Agricultural Service of the Department of Agriculture certified "[s]almon fishermen holding permits and licenses in the states of Alaska and Washington" as eligible to apply for trade adjustment assistance benefits. Trade Adjustment Assistance for Farmers, 68 Fed. Reg. 62,766 (Dep't Agric. Nov. 6, 2003)(notice). Pursuant to this certification and notification thereof, in January of 2004, Plaintiff applied for benefits under the trade adjustment for farmers program pursuant to 19 U.S.C. § 2401e. The USDA denied Mr. Anderson's application for benefits on February 4, 2005, stating that the application was denied because his "net fishing income did not decline from the latest year in which no adjustment assistance was received (2001)." Letter from Ronald Ford, Deputy Director, Program Division, to Robert L. Anderson (Feb. 4, 2005) Administrative Record at 23.

Acting on the agency's letter sent to him, and 7 C.F.R. § 1580.505[5], Mr. Anderson appealed the USDA determination

---

[5]This regulation reads: "[a]ny person aggrieved by a final determination made with respect to an application for program benefits under this part may appeal to the United States Court of International Trade for a review of such determination, in accordance with its rules and procedures." 7 C.F.R. § 1580.505. This provision was adopted in 2004, changing the appeals procedure from the FSA administrative appeal procedure (the National Appeals Division) to the Court of International Trade in accordance with 19 U.S.C. § 2395. 7 C.F.R. Part 1580: Trade Adjustment Assistance for Farmers, 69 Fed. Reg. 63,317, 63,317-18
(continued...)

to this court. In his appeal, Mr. Anderson stated that despite the fact that his income tax returns, which were based on cash receipts, reflected an increase in his income over the period in question, his true income, based on actual sales of salmon (the "accrual method") showed a decline in his income.[6]

_____

[5](...continued)
(Dep't Agric. Nov. 1, 2004) (final rule; technical amendments).

[6]Mr. Anderson initially filed a complaint with the court on April 25, 2005, after the 60 day filing period required by 19 U.S.C. § 2395(a); the 60 day filing period expired on April 5, 2005. Mr. Anderson produced documentation, in response to Defendant's argument that he was jurisdictionally barred from pursuing his claim, that the USDA sent the letter notifying Mr. Anderson of the denial of his request for TAA benefits to an incorrect address despite the fact that the USDA had the correct address on file. Pl.'s Reply Def.'s Resp. 2,5,6. Mr. Anderson learned of the denial of his application for benefits when he went to his local Farm Service Agency, and was informed that a notice had been mailed to him (at the wrong address) and that the stated time to appeal had expired. Mr. Anderson filed his appeal anyway "assuming that it would be acceptable because it was the Farm Service Agency's fault that I was not informed of my disapproval until after the 60 day period to appeal." Id. 3.
     Defendant, citing Irwin v. Dep't of Veterans Affairs, withdrew its 12(b)(1) motion, noting that Mr. Anderson "demonstrated that he made a diligent effort to pursue his claim." Def.'s Reply 2, Irwin v. Dep't of Veterans Affairs, 498 U.S. 89 (1990). Nevertheless, it is "always necessary that the court determine its [own] jurisdiction irrespective of what parties aver, or even agree among themselves." Brecoflex Co. v. United States, 23 CIT 84, 86, 44 F. Supp. 2d 225, 228 (1999).
     Defendant is correct in noting that the doctrine of equitable tolling, as stated in Irwin v. Dept't of Veteran's Affairs, 498 US 89, 95-96 (1990) would permit this claim. However, as this court noted in Truong v. U.S. Sec'y of Agric., 30 CIT __, Slip Op. 06-150, at 4 n.3 (Oct. 12, 2006), language in the opinion of the Court of Appeals of the Federal Circuit in Autoalliance Int'l Inc. v. United States may be read to indicate otherwise. Autoalliance Int'l Inc v. United States, 357 F. 3d. 1290, 1294 (Fed. Cir. 2004) (rejecting tolling of 19 U.S.C. §
(continued...)

**C.**


Because the USDA's regulations defining net farm income invoke the IRS code, the agency's determination of a decline in income between the relevant time periods depends on how that income has been reported to the IRS. Pursuant to the IRS's reporting requirements, taxpayers must report their income for each year.

--------

[6](...continued)
2636(a) because "in suits against the United States, jurisdictional statutory requirements cannot be waived or subjected to excuse based on equitable principles." (citing Mitsubishi Elecs. Am., Inc. v. United States, 18 CIT 929, 932, 865 F. Supp. 877, 880 (1994)).

Autoalliance notwithstanding, the court still finds that it has jurisdiction over this case. Autoalliance dealt specifically with tolling for suits brought under 19 U.S.C. § 2636(a), but did not address equitable tolling under 19 U.S.C. § 2395, dealing with trade adjustment assistance cases. Cf., Former Emples. of BMC Software, Inc. v. United States Sec'y of Labor, 30 CIT __, __, Slip Op. 06-132, at 9 (Aug. 31, 2006) ("The trade adjustment assistance laws are remedial legislation and, as such, are to be construed broadly to effectuate their intended purpose") (citing UAW v. Marshall, 584 F.2d 390, 396 (D.C. Cir. 1978)).

Additionally, it cannot be established that the clock started running to establish a deadline for Mr. Anderson's filing. In Irwin, the Supreme Court held that the clock began to run once the notice of final action was "received." Irwin 498 US at 92. The statute in Irwin specifically stated that "the complaint against the Federal Government under Title VII must be filed 'within thirty days of receipt of notice of the final action taken by the EEOC.'" Id. (quoting 42 U.S.C. § 2000e-16(c)(1988)). Unlike the statute at issue in Irwin, here, 19 U.S.C. § 2395(a) provides that a party "may, within sixty days after notice of such determination, commence a civil action in the United States Court of International Trade for review of [a final] determination." 19 U.S.C. § 2395(a). Though the two provisions are dissimilar, the letter mailed to the wrong address, when the correct address was on file, cannot constitute notice. As such, the clock did not begin to run, and Mr. Anderson's claim is not barred on the basis of not being timely filed.

Recognizing that payment for goods and services frequently lags the sale of such goods and services, the IRS code permits taxpayers to report their income using two principle accounting methods: (1) the cash receipts and disbursements method ("cash method"); and (2) an accrual method.[7] 26 U.S.C. § 446(c).[8]

In plain terms,

---

[7]The IRS code further allows taxpayers to report their income using: any other method permitted by Chapter 1 of Title 26 of the U.S. Code; or any combination of the foregoing methods permitted under regulations prescribed by the Secretary of the Treasury.  26 U.S.C. § 446(c).

[8]In defining these accounting methods, the IRS' regulations provide that

> [G]enerally, under the cash receipts and disbursements method in the computation of taxable income, all items which constitute gross income (whether in the form of cash, property, or services) are to be included for the taxable year in which actually or constructively <u>received</u>.  Expenditures are to be deducted for the taxable year in which actually made.

26 C.F.R. § 1.446-1(c)(1)(i)(2006) (emphasis added).  In contrast,

> under an accrual method, income is to be included for the taxable year when all the <u>events have occurred that fix the right to receive the income and the amount of the income can be determined with reasonable accuracy</u>. Under such a method, a liability is incurred, and generally is taken into account for Federal income tax purposes, in the taxable year in which all the events have occurred that establish the fact of the liability, the amount of the liability can be determined with reasonable accuracy, and economic performance has occurred with respect to the liability.

26 C.F.R. § 1.446-1(c)(1)(ii)(A)(2006) (emphasis added).

[t]he accrual method, as distinguished from the cash receipts and disbursements method of accounting, reports revenues when they are earned even though no cash may have been received and reports expenses when they have been incurred even though no payment of cash has been made in connection with such expenses.

Charles H. Meyer, Accounting and Finance for Lawyers in a Nutshell 26 (3d ed. 2006). [9]

Agriculture's regulations do not distinguish between cash and accrual accounting. Rather, when these accounting methods are incorporated into Agriculture's regulations, the regulations implicitly define "net farm income" to mean either (a) a producer's cash receipts in a given year, or (b) the amount of income, reported under the accrual method tracking the sales less expenses, that the producer earns from agricultural production. Consequently, Agriculture's determination of a decline in income between the relevant time periods depends on how that income has been reported to the IRS.

To illustrate, consider two identical wheat farmers (Producer A and Producer B) who, in all material respects, have the same income stream. Producer A reports her income to the IRS on an accrual basis and Producer B reports his income to the IRS on a cash basis. Assume both make a sale in year 1 for $10 but do not

[9]Once a taxpayer elects an accounting method, "[e]xcept as otherwise expressly provided in [26 U.S.C. §§ 1 et seq.], a taxpayer who changes the method of accounting on the basis of which he regularly computes his income in keeping his books shall, before computing his taxable income under the new method, secure the consent of the [IRS]." 26 U.S.C. § 446(e).

collect the proceeds of this sale until year 2; because of import competition, both farmers are unable to sell any wheat in year 2. At the end of year 2, the Secretary certifies wheat farmers for trade adjustment assistance. By virtue of how they reported their income to the IRS, Producer A will have reported her income to the IRS as $10 in year 1, and $0 in year 2; Producer B would have reported his income to the IRS as $0 in year 1 and $10 in year 2. Consequently, under the Secretary's definition of "net farm income," Producer A would qualify for adjustment assistance while Producer B would not.[10]

**D.**

The underlying question presented by this case is whether Agriculture's application of its definition of net farm income is lawful. The court's review of such a question is guided by the well-established test enunciated in Chevron U.S.A. Inc. v. Nat'l Resources Defense Council, Inc., 467 U.S. 837, 842-43 (1984). First, the court must consider whether Congress has "directly

---

[10]Graphically:

**Goods sold in year 1 with payment received in Year 2**

|  | Year 1 | Year 2 | Difference in income as reported to IRS |
|---|---|---|---|
| Producer A (accrual method) | 10 | 0 | −10 |
| Producer B (cash method) | 0 | 10 | +10 |

spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." Id. However, "[i]f Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation. Such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." Id.

In 19 U.S.C. § 2401e, Congress did not directly define net farm income; rather, by requiring that a "producer's net farm income (as determined by the Secretary)" decline, Congress left an explicit gap for the Secretary to fill . See Steen v. Sec'y of Agric., 29 CIT __, 395 F. Supp. 2d 1345 (2005). The phrase "as determined by the Secretary" provides "an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation." Transitional Hosps. Corp. of La. v. Shalala, 222 F.3d 1019, 1025 (D.C. Cir. 2000) (citing Chevron, 467 U.S. at 843-44); But cf. Selivanoff v. U.S. Sec'y of Agric., 30 CIT __,__, Slip Op. 06-55, at 11-12 (April 18, 2006). Accordingly, the court may only reject the Secretary's definition if she exercises her discretion unreasonably. Transitional Hosps. Corp., 222 F.3d at 1025.

The Secretary filled the statutory gap through 7 C.F.R.

§ 1580.102, stating "Net fishing income means net profit or loss, excluding payments under this part, reported to the Internal Revenue Service for the tax year that most closely corresponds with the marketing year under consideration." 7 C.F.R. § 1580.102. Accordingly, this regulation, issued under a specific grant of congressional rulemaking authority, has "legislative effect," see Batterton v. Francis, 432 U.S. 416, 425 (1977), and the court will pay a "very high degree of deference" to the regulation, "unless they are arbitrary, capricious, or manifestly contrary to the statute.'" Schuler Indus., Inc. v. United States, 109 F.3d 753, 755 (Fed. Cir. 1997) (quoting Chevron, 467 U.S. at 844). Thus, the court must defer to the regulation "unless the Secretary's interpretation is contrary to clear congressional intent or frustrates the policy Congress sought to implement." Schneider v. Chertoff, 450 F.3d 944, 960 (9th Cir. 2006). Further, where, as here, Congress has not specifically mandated individual determinations, "[t]he administration of public assistance based on a formula is not inherently arbitrary." Schweiker v. Gray Panthers, 453 U.S. 34, 48 (1981). Barnhart v. Thomas, 540 U.S. 20, 29 (2003) ("Virtually every legal (or other) rule has imperfect applications in particular circumstances.") (emphasis in original). It follows that, in filling the gap left in the statute, the Secretary's regulation may discriminate between similarly situated parties on grounds related to the statutory purpose underlying

their actions. Stereo Broadcasters, Inc. v. FCC, 652 F.2d 1026, 1029 n. 5 (D.C. Cir. 1981) (citing Garrett v. FCC, 513 F.2d 1056, 1060 (D.C. Cir. 1975). This is because regulations inevitably discriminate to some extent, and "[s]ome over- and under-inclusiveness would not be fatal to [a regulation] if the [agency] gave a reasonable justification for administering only rough justice." Athens Cmty. Hosp., Inc. v. Shalala, 21 F.3d 1176, 1180 (D.C. Cir. 1994). The fact that there exists a hypothetical scenario in which the rule might lead to an arbitrary result does not render the rule "arbitrary or capricious." Am. Hosp. Ass'n v. N.L.R.B., 499 U.S. 606, 619 (1991).

Nonetheless, despite the high level of deference the court accords to the Secretary, the court cannot uphold the application of a regulation if it is "[in]consistent with the fundamental principles of liberty and justice which lie at the base of our civil and political institutions. . . ." Buchalter v. New York, 319 U.S. 427, 429 (1943) (citing Hebert v. Louisiana, 272 U.S. 312, 316-17 (1926)). One fundamental principle of law and justice is that like cases should be treated alike. It is well-established that the law should "'act alike in all cases of like nature.'" See, e.g., Henry J. Friendly, Indiscretion About Discretion, 31 Emory L. J. 747, 758 (1982) (quoting Rex v. Wilkes, 98 Eng. Rep. 327, 335 (1770) (opinion of Lord Mansfield); eBay Inc. v. MercExchange, L.L.C., 126 S. Ct. 1837, 1841-42 (2006) ("limiting

discretion according to legal standards helps promote the basic principle of justice that like cases should be decided alike"); Taber v. Maine, 67 F.3d 1029, 1038 (2d Cir. 1995) ("treating like cases alike is the great engine of the law").

The agency must "explain the relevance of those [arbitary] differences to the purposes of the [Act]." Melody Music, Inc. v. FCC, 345 F.2d 730, 733 (D.C. Cir. 1965). The Secretary may justify discriminating between individuals on grounds of administrative convenience, but ease of administration does not obliterate the Secretary's obligation to provide substantial evidence and follow fundamental principles of justice. Gulf Oil Corp. v. Hickel, 435 F.2d 440, 446 (D.C. Cir. 1970) (citing Carmichael v. S. Coal & Coke Co., 301 U.S. 495, 511 (1937)) ("An agency confronted with a complex task may rationally turn to simplicity in ground rules, and administrative convenience, at least where no fundamental injustice is wrought"); United States v. Udy, 381 F.2d 455, 458 (10th Cir. 1967) ("ease of administration does not make an administrative determination any the less arbitrary when it otherwise had no substantial evidence to support it").

An agency rule may still be found arbitrary and capricious

if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

State Farm, 463 U.S. at 43. Therefore, courts have found that there exist some circumstances where it is impermissible for a rule to arbitrarily distinguish between similarly situated individuals. See Capital Cities Commc'ns, Inc. v. FCC, 554 F.2d 1135 (D.C. Cir. 1976); Melody Music, 345 F.2d 730.[11]

Agencies have a responsibility to administer their statutorily accorded powers fairly and rationally, which includes not "treat[ing] similar situations in dissimilar ways." Burinskas v. N.L.R.B., 357 F.2d 822, 827 (D.C. Cir. 1966) (citing Melody Music, 345 F.2d 730). Indeed, a principal justification for the administrative state is that in "areas of limitless factual variations, like cases will be treated alike." Nat'l Muffler Dealers Ass'n v. United States, 440 U.S. 472 (1979)(internal citations omitted); South Shore Hosp., Inc. v. Thompson, 308 F.3d 91, 101 (1st Cir. 2002) ("The goal of regulation is not to provide exact uniformity of treatment, but, rather, to provide uniformity of rules so that those similarly situated will be treated alike"). Courts will therefore not defer to an agency regulation or adjudicative decision when they produce results which are arbitrary, capricious, or manifestly contrary to the statutory scheme. Exxon Corp. v. United States, 40 Fed. Cl. 73, 86 (1998)

---

[11]In reviewing that reasonableness of an agency's regulation, the court applies a more stringent level of scrutiny than a rational basis inquiry under the Due Process Clause of the Fifth Amendment.

(citing <u>Chevron</u>, 467 U.S. at 844); <u>Schuler Indus., Inc. v. United States</u>, 109 F.3d at 755; <u>Schneider v. Chertoff</u>, 450 F.3d at 960.

### DISCUSSION

The issue in this case arises because the USDA "defines" net income by grafting the "net income" figure from the producer's income taxes into the USDA's own regulatory framework.  By relying only on the income farmers (and fishermen) report to the IRS[12], and not distinguishing between accounting techniques, the USDA will not, in some circumstances, be treating like persons alike.  This is because once a taxpayer has chosen a particular method of computing and reporting taxable income for income tax purposes, he cannot change methods without the approval of the Commissioner of the IRS.  <u>See</u> 26 U.S.C. § 446(e).

As explained above, where the taxpayer has chosen the cash method, items are included in the taxable year in which they have been actually or constructively received.  26 C.F.R. § 1.446-1(c)(1)(i).  The cash method does not attempt to accurately match expenses with income in a single year.  <u>See, e.g.</u>, <u>Bonaire Dev. Co. v. Comm'r</u>, 679 F.2d 159, 162 (9th Cir. 1982); Jacob

---

[12]The USDA also allows for supplemental information to be submitted to augment the information provided by "net fishing income."  See 7 C.F.R. § 1580.301(e)(6); <u>see also</u> <u>Selivanoff v. Sec'y of Agric.</u>, 30 CIT __, Slip Op. 06-55, at 10 n. 4 (Apr. 18, 2006); <u>Trinh v. Sec'y of Agric.</u>, 29 CIT __,__, 395 F. Supp. 1259, 1271-72 (2005).  Apparently, the agency did not utilize this provision in considering Mr. Anderson's case.

Mertens, Jr., 2 Mertens Law of Fed. Income Tax'n § 12:14 (2006) ("Under the cash method, there is no necessary correlation between the period that income is earned and the period that payments are received"). Thus, for cash method taxpayers, it is the actual or constructive receipt of the income, rather than the time it is earned, that determines its includability in income. 26 U.S.C. § 451(a).

It is well-established that the cash method usually leads to distorted income statements for any one taxable year. See, e.g., Frysinger v. Comm'r, 645 F.2d 523, 527 (5th Cir. 1981). However, the "sacrifice in accounting accuracy under the cash method represents an historical concession by the Secretary and the Commissioner to provide a unitary and expedient bookkeeping system for farmers and ranchers in need of a simplified accounting procedure." United States v. Catto, 384 U.S. 102, 116 (1966); see also Frysinger, 645 F.2d at 527 (finding the Commissioner has specifically granted farmers the special privilege of using the cash method despite the high probability for substantial distortions of income in any one taxable year). For income reporting purposes, the distortions are not considered material because "over a period of years the distortions will tend to cancel out each other." Van Raden v. Comm'r, 71 T.C. 1083, 1104 (1979); see also Spitalny v. United States, 430 F.2d 195, 197 (9th Cir. 1970).

In contrast to the cash method, the accrual method allows taxpayers to "charg[e] against income earned during the taxable period, the expenses incurred in and properly attributable to the process of earning income during that period." United States v. Anderson, 269 U.S. 422, 440 (1926). Although the IRS may allow the taxpayer to use either the cash or accrual method, the taxpayer's reported income may be substantially different for the years in question depending on their choice of reporting method. See, e.g., Ralston Dev. Corp. v. United States, 937 F.2d 510, 513 (10th Cir. 1991) (finding substantial differences in the results achieved under the cash and accrual methods); see also supra, pp. 8-9.

This is not the first time that distortions related to the differences between cash and accrual accounting have raised concern. In Catto, for example, the Supreme Court considered the Commissioner's authority to approve a taxpayer's request to transition from using one method of accounting to another. Catto, 384 U.S. at 116. In approving the Commissioner's authority under the facts of that case, the Court found that the plaintiffs had meaningfully elected their accounting technique. In the course of so holding, however, the Court suggested that:

> particular legislative or administrative mutations in the
> tax laws may foster inequities so great between taxpayers
> similarly situated that the Commissioner could not
> legitimately reject a proposed change in accounting
> method unless the taxpayer had exercised a meaningful
> choice at the time he [or she] selected his [or her]
> contemporary method.

Id. at 115-16. This leaves open the possibility that there is some level of inequity that would not allow for the different accounting methods to be used interchangeably.

Both of the concerns identified above are necessarily present here: (1) Plaintiff elected his accounting technique long before knowing the consequences that his election would have on his eligibility for trade adjustment assistance (therefore, one could hardly attribute to him a meaningful election); and (2) because the statute and regulations focus on one year intervals, distortions do not necessarily cancel out each other. Consequently, there can be no doubt that the application of the regulation here differentiates amongst farmers or fishermen soley on the basis of their income-reporting method to the IRS.

In defense, the government claims that the requirement that "net farm income" and "net fishing income" be consistent with what was reported to the IRS, regardless of whether the income was reported on an accrual or cash basis, is necessary to prevent fraud. See Def.'s Supp. Br. Resp. Ct.'s Questions 5 ("Def.'s Supp. Br.") ("Without a requirement that 'net farm income' and 'net fishing income' be consistent with what is reported to the IRS, a producer could manipulate the 'net farm income' reported to the USDA while at the same time potentially making large year over year profits.") The Defendant also claims that this conforms to the IRS's requirement that a "taxpayer must use the same accounting

method to figure [their] taxable income and to keep their books." Id. at 5-6. Additionally, the government argues that a contrary rule would potentially require a TAA beneficiary to maintain two separate sets of books, which is "specifically disallowed by IRS rules." Id. at 6.

While the government points to the possibility of fraud, it has not explained how such fraud would occur. Additionally, and more importantly, the reasons given as to why it would be unworkable, or not material, for the USDA to consider evidence that, as measured on an accrual basis, Mr. Anderson's income has declined on a year-over-year basis, are all post-hoc rationalizations. The USDA has stated that it relies on income as reported to the IRS, and using that parameter, Mr. Anderson's income did not decrease. As such, the USDA did not comment on the issues that are raised by Mr. Anderson's claim. Accordingly, any of the explanations offered by the government counsel here are post-hoc rationalizations, and therefore do not constitute a sufficient basis for the court to reach a decision on the legality of the Defendant's determination. As stated by the Supreme Court:

> a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside exclusively for the

administrative agency.

SEC v. Chenery Corp., 332 U.S. 194, 196 (1947).  See also
Burlington Truck Lines Inc. v. United States, 371 U.S. 156, 168
(1962) ("courts may not accept appellate counsel's post hoc
rationalizations for agency action").

The need for the agency to consider these issues and provide
its own rationale for a particular determination is particularly
acute when, as here, the agency has failed to consider an important
aspect of a problem.  See State Farm 463 U.S. at 43.  Though an
agency has the right to draw a line on the basis of efficiency, see
Barnhart, 540 U.S. at 29, at the same time, the agency has to be
aware of the line that it is drawing and provide some basis for
drawing that line, Stereo Broadcasters, 652 F.2d at 1029 n. 5;
Athens Cmty. Hosp., Inc, 21 F.3d at 1180.[13]

---

[13]In the notice and comment period for 7 C.F.R. § 1580.102,
the USDA did receive comments on the "net farm income" definition
which it addressed. Specifically,

> [t]hree respondents expressed concern that producers
> managing diversified farms might not qualify for
> adjustment assistance payments due to higher earnings
> from sales of other commodities. The purpose of TAA is
> to assist producers to adjust to imports by providing
> technical assistance to all and cash payments to those
> facing economic hardship. The final rule leaves
> unchanged the requirement that producers certify to a
> decline in net farm income, as reported on Internal
> Revenue Service Schedule F (Form 1040) and Form 4835,
> in order to receive a cash payment. However, the final
> rule does exclude TAA payments from being considered
> part of net farm income in subsequent qualifying years.

(continued...)

Nevertheless, it is also unquestionably true that whatever definition of "net farm income" the Secretary adopts will undoubtedly lead to some artificial distinctions between those who qualify for benefits and those who do not.  See, e.g., Capital Cities Commc'ns, 554 F.2d at 1139 ("Such line-drawing problems are always with us. Any classification which requires drawing a line is necessarily arbitrary to some extent.").  Here, however, the USDA has not provided an explanation as to why it has drawn this line, and why the discriminatory effects of such a line are acceptable. Nor has the USDA considered the reasonableness of this result compared to other available alternatives.  Cf. Barnhart 540 U.S. at 29.

Therefore, the court remands this determination to the USDA for it to consider the reasonableness of its regulation as applied to Mr. Anderson, in view of the differences in cash versus accrual accounting, the inequities the agency's application presents, and the fact that applicants elect their accounting technique without

---

[13](...continued)
Otherwise, TAA payments might be the cause for excluding producers from receiving the full benefits of the program.

7 CFR Part 1580: Trade Adjustment Assistance for Farmers, 69 Fed. Reg. 50,048, 50,049 (Dep't Agric. Aug. 20, 2003)(final rule). There is no record that during the notice-and-comment period, or in the consideration of Mr. Anderson's application, the USDA considered the unique situation that farmers and fishermen, as individual producers, find themselves in, insofar as they are able to report their income on either a cash or accrual basis.

knowing that it could adversely impact their eligibility for benefits in the future. On remand, the agency shall reconsider its position and may reopen the record to permit an acceptable alternative solution.

**CONCLUSION**

For the foregoing reasons, the court remands this matter for further consideration consistent with this opinion. The agency shall have until December 1, 2006, to provide a remand determination. Plaintiff shall submit comments on the remand determination no later than December 15, 2006, and the government shall submit rebuttal comments no later than January 3, 2007.

SO ORDERED.


Dated: November 1, 2006
       New York, N.Y.


                                   /s/ Donald C. Pogue
                                  Donald C. Pogue, Judge